*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NOSSONAL KLEINFELDT,

        Plaintiff-Appellee,

v

NICOLE STERN,

        Defendant-Appellant.

UNPUBLISHED
June 05, 2025
2:00 PM

Nos. 369562; 369563; 369634;
369931; 371752
Oakland Circuit Court
Family Division
LC No. 2022-511266-DC

---

NOSSONAL KLEINFELDT,

        Plaintiff-Appellee/Cross-Appellant,

v

NICOLE STERN,

        Defendant-Appellant/Cross-Appellee.

No. 369635
Oakland Circuit Court
Family Division
LC No. 2022-511266-DC

---

NOSSONAL KLEINFELDT,

        Plaintiff-Appellant,

v

NICOLE STERN,

        Defendant-Appellee.

No. 371076
Oakland Circuit Court
Family Division
LC No. 2022-511266-DC

---

-1-

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

PER CURIAM.

In these seven consolidated appeals,[1] the parties dispute issues of parenting time, attorney fees, and sanctions. In Docket No. 369562, defendant appeals as of right an opinion and order that, in relevant part, modified the parties' parenting-time schedule to allow plaintiff to exercise equal parenting time with the minor child, ASK, consisting of one week of parenting time per month in the state of Michigan (where plaintiff resides) and seven overnights of parenting time in the state of Florida (where defendant resides). In Docket No. 369563, defendant appeals as of right an order denying her motion for attorney fees as frivolous-filing sanctions. In Docket No. 369634, defendant appeals as of right an order respecting the denial of her request for attorney fees under MCR 3.206(D)(2)(a). In Docket No. 369635, defendant appeals as of right an amended version of the opinion and order appealed in Docket No. 369562. Plaintiff cross-appeals from the same order. In Docket No. 369931, defendant appeals by delayed leave granted[2] (1) an order denying her motion to suspend plaintiff's parenting time on the basis of allegations of physical and sexual abuse and (2) an order rescinding the temporary suspension of plaintiff's parenting time pending an evidentiary hearing on the abuse allegations. In Docket No. 371076, plaintiff appeals as of right an order finding him in civil contempt of court and ordering him to pay defendant's attorney fees associated with the contempt proceedings. Finally, in Docket No. 371752, defendant appeals by delayed leave granted[3] the same orders as she appeals as of right in Docket Nos. 369562 and 369635, raising additional arguments outside the scope of those direct appeals. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This original custody action between the parties, who were never married, has a complex trial and appellate history. The trial court entered the original custody order on March 10, 2023. Defendant appealed that order, resulting in this Court's opinion in *Kleinfeldt v Stern*, unpublished per curiam opinion of the Court of Appeals, issued April 18, 2024 (Docket Nos. 365506 and 366777) (*Kleinfeldt I*), vacated in part ___ Mich ___ (2024) (Docket No. 167316), which addressed issues relating to jurisdiction, custody, parenting time, child support, and attorney fees.[4]

---

[1] *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered December 23, 2024 (Docket Nos. 369562, 369563, 369634, 369635, 369931, 371076, and 371752).

[2] *Kleinfeldt v* Stern, unpublished order of the Court of Appeals, entered March 14, 2024 (Docket No. 369931).

[3] *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371752).

[4] In lieu of granting leave to appeal, the Michigan Supreme Court entered an order vacating the portion of *Kleinfeldt I* addressing domicile. *Kleinfeldt v Stern*, ___ Mich ___; 13 NW3d 325, 325 (2024) (*Kleinfeldt II*). On March 13, 2025, this Court issued an opinion remanding the case to the

The instant appeals chronologically begin approximately where *Kleinfeldt I* ended. In an April 2023 order relating to *Kleinfeldt I*, this Court stayed the parenting-time provision in the March 10 order providing that ASK would travel to Michigan with plaintiff twice per month. This prompted the first event relevant to this appeal—plaintiff filed several motions for parenting time in the spring of 2023 because the parties disagreed about the scope of this Court's stay and could not agree on an interim parenting-time arrangement.

On May 17, 2023, defendant moved for attorney fees as frivolous-filing sanctions, as well as a $10,000 bond for security for costs. Defendant argued that plaintiff's parenting-time motions were frivolous because this Court stayed plaintiff's parenting time pending the appeal in *Kleinfeldt I*. Before the trial court ruled on this motion, this Court in early June 2023 entered an order directing the trial court to issue an interim order allowing plaintiff to exercise meaningful parenting time with ASK, but without excessive travel for the child. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered June 5, 2023 (Docket No. 365506) (*Kleinfeldt COA Order I*).

Later in June 2023, the trial court granted plaintiff parenting time for the Father's Day holiday. The court also entered an order providing an interim parenting-time schedule for the summer of 2023, which granted plaintiff one week of parenting time per month in Michigan.

On August 1, 2023, the trial court signed an order for ASK to attend speech therapy classes, which, in relevant part, required the parties to post updates on the Our Family Wizard (OFW) messaging application within 24 hours of each of ASK's healthcare appointments, and required each party to provide the other party the names of each of ASK's caregivers on the OFW application. Later that month, defendant moved for attorney fees and costs under MCR 3.206(D), arguing that she did not have enough funds to pay her attorneys because she lost her business after residing in Michigan during the custody trial. She argued that plaintiff, a high-wage earner, could afford to pay her attorney fees. For his part, plaintiff continued to request parenting time, and also requested authorization to begin services in Michigan for ASK's recent autism diagnosis.

On August 25, 2023, ASK returned to Florida after spending the week in Michigan with plaintiff. During his time in Michigan, ASK attended a well-child visit with pediatrician Dr. Brian Gendelman, and attended a visit at Children's Hospital of Michigan, where his autism diagnosis was confirmed. As discussed later, plaintiff called defendant while in Dr. Gendelman's office, and Dr. Gendelman would testify that he ended his doctor-patient relationship with ASK due to defendant's conduct during that call. Upon returning ASK to Florida, plaintiff informed defendant that ASK had an improving diaper rash. According to defendant, when ASK returned to her care, ASK had a "sopping wet diaper" that had soaked through his pants and shirt. Defendant then took ASK swimming at a relative's home, at which time she discovered that he had "swelling, bruising, and redness which did not appear to be a diaper rash." Defendant called her attorney, who advised defendant to take ASK to the emergency room.

---

trial court for reconsideration of the domicile issue. *Kleinfeldt v Stern (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2025 (Docket Nos. 365506 and 366777) (*Kleinfeldt III*).

Defendant took ASK to the Jupiter Medical Center, where Dr. Anita Narasimhan and nurse practitioner Kristen Kvies evaluated him in the emergency department. Dr. Narasimhan diagnosed ASK with a perianal hematoma, an anal tear, and traumatic ecchymosis of his buttocks. The corresponding medical report stated, "Suspected Abuse." ASK was referred to Florida's Child Protection Team (CPT) for a forensic examination, which was performed by Jessica Franqui. Although she did not reach a conclusion that night, Franqui eventually found that there were no signs of abuse. Florida's Department of Child and Family Services (DCF) and Michigan's Children's Protective Services (CPS) investigated the allegations as well but closed their cases after learning the CPT results. Similarly, the Jupiter Police were initially involved in the case but referred the matter to Michigan, where the local prosecutor's office declined to pursue any charges against plaintiff.

A few days after defendant took ASK to the hospital, she applied for a no-contact order on ASK's behalf against plaintiff in Florida. A no-contact order was temporarily issued, which was rescinded after the Florida court found that Michigan was the appropriate jurisdiction. Defendant did not petition for a personal-protection order in Michigan.

Instead, on September 6, 2023, defendant moved to suspend plaintiff's parenting time. Before plaintiff responded to the motion, the trial court issued an ex parte order temporarily suspending plaintiff's parenting time pending an evidentiary hearing. Plaintiff denied all allegations of wrongdoing, and he moved to rescind the ex parte order suspending his parenting time, arguing that the court improperly issued it before hearing defendant's motion. Plaintiff also moved for sanctions against defendant and her counsel under MCR 1.109(E), arguing that the motion to suspend his parenting time was frivolous. He argued that defendant knew about the CPT findings but nevertheless pursued the suspension of plaintiff's parenting time. Defendant argued that the CPT findings were not conclusive on the issue, particularly when the Jupiter Medical Center personnel had reached a different conclusion on abuse. After a hearing, the court denied plaintiff's request for attorney fees as sanctions, reasoning that there was no evidence that defendant had actual knowledge of the result of the forensic examination and criminal investigation when she filed her motion to suspend plaintiff's parenting time.

The court conducted a two-day evidentiary hearing on the abuse allegations in October and November 2023. As discussed in more detail later, the court's scheduling order limited the amount of time each witness would be allowed to testify. As also discussed later, numerous witnesses testified at the hearing, including Dr. Sara Connolly (ASK's Florida pediatrician), Franqui, DCF investigator Jaharia Sweet Sanchez, CPS investigator Eva Opalinski, and experts for plaintiff (Tristan Wristen) and defendant (Dr. Robert Levine). The court also heard testimony from defendant's prospective expert witness, Dr. Bradley Norat, whom plaintiff called as a witness. Neither Kvies nor Dr. Narasimhan appeared to testify at the evidentiary hearing, but, over plaintiff's objection, the court admitted the *de bene esse* deposition transcripts of these witnesses and played the videos of the depositions into the record. The court also conducted a best-interest hearing because both parties had requested temporary sole legal custody of ASK.

Following the evidentiary hearing, in two nearly identical opinions and orders, the trial court denied defendant's motion to suspend plaintiff's parenting time and granted plaintiff's motion to rescind the ex parte order temporarily suspending his parenting time. After reviewing

the testimony in detail, the court ruled that defendant had not established by clear and convincing evidence that ASK would be harmed if plaintiff exercised parenting time.

On November 15, 2023, defendant moved for sanctions against plaintiff under MCR 1.109(E), for attorney fees under MCR 3.206(D), and for a $10,000 bond for security for costs. In relevant part, defendant argued that plaintiff had made several misrepresentations in his motion for sanctions against defendant and through his counsel on the record during recent court hearings. In response, plaintiff denied making any misrepresentations and argued that defendant had racked up a large attorney-fee bill by hiring numerous attorneys and having multiple attorneys attend each court hearing. The court ultimately denied defendant's May 17, 2023 and November 15, 2023 motions for attorney fees.

In mid-December 2023, plaintiff moved, on an emergency basis, to compel defendant's compliance with the holiday parenting-time provision of the original custody judgment, arguing that defendant had not agreed to produce ASK for holiday parenting time as provided in the custody judgment. Plaintiff included in his motion information about his December 24, 2023 flight to Florida to retrieve ASK, and his December 31, 2023 return flight from Michigan to Florida. The court granted the motion, and plaintiff's holiday parenting time began on December 24, 2023.

In early January 2024, defendant filed an ex parte motion for the immediate return of ASK and for an order for plaintiff to show cause why he should not be held in contempt of court after he failed to return ASK on December 31, 2023. Defendant traveled to Michigan and enlisted the help of the police to retrieve ASK, but plaintiff did not surrender him. Defendant also argued that plaintiff had violated other court orders by taking ASK to a healthcare appointment during his parenting time without defendant's consent, and had allowed caregivers to watch ASK without notifying defendant. For his part, plaintiff maintained that he had deferred to the advice of his attorneys on returning ASK, and he argued that parenting time should not "default" to defendant in the absence of a new parenting-time order.

The court scheduled an in-person emergency hearing and ordered all parties and ASK to appear. During the hearing, the court ordered the immediate return of ASK to defendant, and scheduled a show-cause hearing. The parties disputed the language of the show-cause order, as discussed later.

Before the show-cause hearing, plaintiff moved the court for an order requiring defendant to undergo a psychological evaluation for medical child abuse, arguing that defendant still harbored a belief that ASK was harmed in plaintiff's care and, as a result, was subjecting ASK to unnecessary medical treatments and taking nude photographs of ASK before and after plaintiff's parenting time. Plaintiff also moved for makeup parenting time relating to the period his parenting time was suspended.

On January 26, 2024—the first day of the show-cause hearing—the trial court issued a 34-page opinion and order touching on several outstanding motions and subjects. In relevant part, the trial court found that ASK had a temporary established custodial environment with defendant considering the lengthy period plaintiff's parenting time had been suspended. The court further found that ASK had mild autism requiring services, and that both parents loved ASK. Because the established custodial environment was with defendant, the court noted that plaintiff would have

to establish his burden of proof by clear and convincing evidence, and defendant would have to establish her burden by a preponderance of the evidence. After discussing the best-interest and parenting-time factors, the court ordered that plaintiff would have 182.5 overnight visits of parenting time, with one week of parenting time per month to be spent in Michigan. Plaintiff would also receive 38 days of makeup parenting time for the period his parenting time was suspended pending the abuse allegations. The court appointed a guardian ad litem, ordered ASK to attend therapies and school through a structured learning environment in Florida, and ordered both parties to undergo a psychological evaluation. The court also required the parties to file a $1,500 surety bond for each motion and pleading filed in the court, which would be returned if the party prevailed on the motion. Justifying the bond, the court noted that the parties had filed a combined 41 motions in the court since the custody judgment was entered less than a year earlier.

On February 2, 2024, the court amended its January 26, 2024 order and, in relevant part, added a provision about temporary child support, which will be discussed in more detail later. The trial court also addressed defendant's request for attorney fees under MCR 3.206(D) based on her inability to bear the expense of the litigation. After reviewing the evidence on the issue, which is discussed later, the court again ruled that defendant had not established an inability to pay her own attorney fees.

In May 2024, the trial court issued two orders regarding the show-cause hearing. After summarizing the testimony, the court held plaintiff in civil contempt for unilaterally deciding to keep ASK and failing to return him under the terms of the custody judgment and the holiday parenting-time schedule. The court found that plaintiff was aware that the trial court did not issue a parenting-time order following the evidentiary hearing, and he misled the court by attaching to his motion his travel itinerary containing return-trip information. Regarding caregiver notice, the court ruled that because there was evidence that plaintiff's girlfriend (Jen) cared for ASK outside of plaintiff's presence, plaintiff violated the August 1, 2023 order by not providing defendant with Jen's name. On the issue of healthcare notice, the court found that the appointment at issue was a healthcare appointment, and held plaintiff in civil contempt for failing to inform defendant about the appointment. These appeals followed.

## II. PARENTING TIME

The first issue we address on appeal is defendant's argument in Docket No. 371752 that the trial court abused its discretion in its January 26, 2024 and February 2, 2024 orders by requiring ASK to travel one week per month from Florida to Michigan for parenting time with plaintiff. We vacate the parenting-time provisions of the January 26, 2024 and February 2, 2024 opinions and orders on the basis of the law-of-the-case doctrine.[5]

---

[5] We reject plaintiff's argument that defendant waived the parenting-time issue, or rendered it moot, because she agreed to a parenting-time consent order maintaining the status quo in terms of ASK's travel to Michigan while these appeals were pending. Plaintiff's arguments are based on a July 31, 2024 consent order. We decline to consider this order because it is not part of the record on appeal. "This Court's review is limited to the record established by the trial court, and a party

-6-

Three standards of review apply to parenting-time decisions. " 'Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue.' " *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (citation omitted). A finding is against the great weight of the evidence if the "facts clearly preponderate in the opposite direction." *Id*. at 21. An abuse of discretion in child-custody cases exists " 'when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias.' " *Id*. (citation omitted). A clear legal error occurs " 'when the trial court errs in its choice, interpretation, or application of the existing law.' " *Id*. (citation omitted). Whether the law-of-the-case doctrine applies and to what extent are questions of law reviewed de novo. See *id*.

The law-of-the-case doctrine is a judicially created doctrine designed to promote consistency throughout the case. *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Id*. (quotation marks and citation omitted). So the appellate court's decision on an issue in the case binds the lower court on remand and binds the appellate court in any subsequent appeals in the same case. *Id*. The doctrine applies to issues that were " '*actually decided*, either implicitly or explicitly, in the prior appeal.' " *Id*. at 287 (citation omitted). An exception applies when there has been a material change in the facts of the case or in the law. *Duncan v Michigan*, 300 Mich App 176, 189; 832 NW2d 761 (2013).

This Court previously decided on three separate occasions that an order requiring ASK to bear the burden of travel is an abuse of discretion. On May 10, 2023, this Court peremptorily vacated the portion of the trial court's March 10, 2023 order requiring ASK to fly from Michigan to Florida or back every two weeks. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, issued May 10, 2023 (Docket No. 365506) (*Kleinfeldt COA Order II*). When plaintiff requested clarification, this Court entered a June 5, 2023 order providing, in relevant part:

> The trial court's March 10, 2023 order is VACATED only to the extent it set the parenting time in two-week increments alternating between Florida and Michigan, which effectively required the minor child to fly from Michigan to Florida or back every two

---

may not expand the record on appeal." *Sherman v Sea Ray Boats*, 251 Mich App 41, 56; 649 NW2d 783 (2002). This Court has already rejected plaintiff's attempt to expand the record to include a transcript from a July 22, 2024 proceeding where the topic was discussed, as well as the July 31, 2024 consent order. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371752). Plaintiff provides no legal basis for expanding the record, and we decline to reconsider the issue. See MCR 2.119(F). Nor are we persuaded that we may take judicial notice of the consent order under MRE 201, particularly when the parties dispute the meaning of the language of the order, and when the order, by plaintiff's own admission, is no longer in effect.

weeks. That schedule remains vacated as an abuse of discretion. *Merecki v Merecki*, 336 Mich App 639, 971 NW2d 659 (2021); *Brown v Brown*, 332 Mich App 1, 955 NW2d 515 (2020). While this appeal remains pending the trial court is directed to issue an interim parenting time order allowing plaintiff meaningful parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and plaintiff without requiring excessive travel for the child. MCL 722.27a(1). [*Kleinfeldt COA Order I*, unpub order at 1.]

Later, in *Kleinfeldt I*, this Court vacated all interim parenting-time orders (including the interim order providing that ASK would travel to Michigan once per month in the summer of 2023), clarifying that the trial court abused its discretion when it "placed the burden on [ASK] to travel from state to state." *Kleinfeldt I*, unpub op at 22. This Court ordered the trial court to "contemplate a parenting-time order that puts the burden on [the parents], rather than the child," and remanded the case to the trial court "for further consideration of an appropriate parenting-time schedule." *Id*. at 22-23. Therefore, we conclude that this Court has already passed on this legal question on three occasions.

As noted above, an exception to the law-of-the-case doctrine applies when the facts of the case have materially changed, see *Duncan*, 300 Mich App at 189, but that exception does not apply here. Plaintiff points out that ASK was 22 months old when this Court entered the May 10, 2023 order and is now about four years old, but we do not consider this a material change. Traveling long distances for parenting time would be a burden to ASK because of his young age and special needs. See *Kleinfeldt I*, unpub op at 22. As the trial court recognized, ASK was diagnosed with autism, which requires that the parties coordinate services. Considering the child's special needs and the need to coordinate several services, this Court's holding that the child should not bear the travel burden arguably has even more weight.[6] For these reasons, we clarify that the regular parenting-time provisions of the January 26, 2024 and February 2, 2024 orders are vacated, and the case is remanded for further consideration of a parenting-time schedule that would not impose frequent travel burdens on the child. We note that our order does not extend to the holiday parenting-time from the original custody judgment or the makeup parenting time awarded to plaintiff in the January 26 and February 2 orders. On remand, the court should consider updated information, including ASK's need for therapies and treatments to address his autism diagnosis. See *Bofysil v Bofysil*, 332 Mich App 232, 248; 956 NW2d 544 (2020); *Rittershaus v Rittershaus*, 273 Mich App 462, 475-476; 730 NW2d 262 (2007).[7]

---

[6] For this reason, even if the law-of-the-case doctrine did not apply, we would reach the same conclusion as *Kleinfeldt I*.

[7] Because we vacate the parenting-time orders at issue, the trial court on remand will issue a new parenting-time order. We therefore decline to address the parties' competing arguments in Docket Nos. 369562, 369635, and 371752 about the best-interest and parenting-time factors, as well as defendant's argument that the court abused its discretion by awarding plaintiff roughly equal parenting time.

## III. DEFENDANT'S MOTION TO SUSPEND PLAINTIFF'S PARENTING TIME

In Docket No. 369931, defendant argues that the trial court committed a clear legal error and abused its discretion by denying her motion to suspend plaintiff's parenting time because (1) the court failed to make any findings on the best-interest or parenting-time factors and applied the wrong burden of proof; (2) the court failed to meaningfully analyze the issue and overlooked key evidence supporting defendant's position; (3) the court improperly limited the testimony of witnesses at the evidentiary hearing; and (4) the court failed to admit certain photographic evidence into the record. We disagree.

## A. THRESHOLD INQUIRY

Which burden of proof applies to a trial court's custody determination presents a question of law reviewed de novo. *Griffin v Griffin*, 323 Mich App 110, 118; 916 NW2d 292 (2018). The central question here, however, is not which burden of proof applies but whether the trial court was even required to analyze the best-interest and relevant parenting-time factors after finding that defendant had not proved the threshold issue of whether plaintiff's exercise of parenting time would harm ASK. We conclude that it was not.

"A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). So, when defendant sought to suspend plaintiff's parenting time under MCL 722.27a(3) on the basis of the abuse allegations, she had to show by clear and convincing evidence that continuing plaintiff's parenting time would endanger ASK's physical, mental, or emotional health. Clear and convincing evidence is evidence that

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact-finder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (quotation marks, citation, and alterations omitted).]

The requirement that a movant show by clear and convincing evidence that the continuation of parenting time would harm the child serves the same function as the threshold finding of proper cause or change in circumstances warranting a modification of custody or parenting time. See *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017) (explaining that proper cause or change in circumstances is a threshold issue that a court must decide before determining whether a change in custody or parenting time would be in the best interests of the child). That is, both showings are threshold inquiries. It follows that after the trial court found that defendant had not proved that allowing plaintiff to exercise parenting time would endanger ASK's physical, mental,

or emotional health under MCL 722.27a(3), there was no need for the court to engage in further analysis.[8]

## B. MERITS OF TRIAL COURT'S RULING

Turning to the merits of the court's ruling, defendant argues that the trial court erred by failing to analyze or discuss the findings and opinions of Dr. Narasimhan and Kvies in the court's November 27, 2023 written opinions and orders. We disagree.

First, the trial court clearly reviewed and considered the deposition testimony of Dr. Narasimhan and Kvies in its November 27, 2023 opinion denying defendant's motion to suspend plaintiff's parenting time because it stated as much in its opinion.

Second, to the extent that defendant's complaint is that the trial court did not discuss this evidence more, the court simply was not required to. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005) (noting that a trial court's findings and conclusions do not need to include consideration of each piece of evidence submitted by the parties). As this Court has explained, a "trial court's failure to comment cannot be construed to mean that it did not consider the evidence." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). For purposes of analyzing whether the trial court's factual findings were against the great weight of the evidence, the record must only "be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id*. We find the record sufficiently developed to facilitate appellate review. Therefore, we reject defendant's suggestion that the trial court's failure to outline Dr. Narasimhan's or Kvies's testimony in detail is evidence that it failed to consider or weigh this evidence.

Defendant is correct that Dr. Narasimhan and Kvies provided testimony that supported her position that abuse occurred, but other testimony supported that it did not. Franqui testified about the forensic examination she performed on ASK and how she was able to perform a detailed genital examination because ASK fell asleep during the examination, yet she did not see evidence of an acute injury to ASK's anus or any evidence of sexual penetration.[9] Wristen, a board-certified

---

[8] We find no merit to defendant's argument that a preponderance-of-the-evidence standard applied to the court's determination on whether to suspend plaintiff's parenting time because the court found two months later that ASK's established custodial environment was with her. MCL 722.27a(3) provides that the child has the right to parenting time with a parent unless it is shown on the record, by clear and convincing evidence, that parenting time would endanger the child's physical, mental, or emotional health. There is no exception depending on whether the established custodial environment is with one or both parents.

[9] On appeal, defendant tries in various ways to undermine Franqui's findings and her credibility, but many of defendant's attacks on Franqui were considered and rejected by the trial court when rendering its decision. For instance, defendant complains that Franqui did not use a digital camera (or colposcope) to take photographs of ASK, but the trial court noted that Franqui used a cell phone owned by CPT to take photographs because the camera she ordinarily used was broken. There is

-10-

Sexual Assault Nurse Examiner (SANE) in pediatrics, testified that, after reviewing all the records, the reports were not consistent with sexual assault. Wristen highly suspected that ASK had experienced venous congestion or venous pooling, rather than an acute injury. Wristen also explained that the emergency room personnel do not generally conduct a thorough examination of the genital area and will instead defer to the forensic examiner.[10] Similarly, Dr. Norat, a child-abuse pediatrician, testified that after reviewing the records in the case, the result of his report was "indeterminate" or "[n]onspecific" for sexual abuse. All of this evidence supported the court's conclusion that defendant failed to establish by clear and convincing evidence that ASK was physically or sexually abused in plaintiff's care.[11] We accordingly conclude that the trial court's

_____

also no indication in the record that the photographs would have looked any different if Franqui had used a colposcope to take them, so we cannot conclude that the trial court abused its discretion by failing to find this fact dispositive. Defendant also complains about Franqui's credentials, but that goes to the weight of Franqui's testimony, and we generally defer to the factfinder on matters of weight and credibility. See *Martin v Martin*, 331 Mich App 224, 239; 952 NW2d 530 (2020); *Zeeland Farm Serv, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). As for defendant's theory that Franqui (a fact witness) could not testify about her forensic-examination findings at the evidentiary hearing, defendant simply does not support her theory.

[10] Defendant does not support her argument that, under MRE 702, Franqui and Wristen were required to produce peer-reviewed documentation to support that their training or certifications were recognized in the medical profession. Accord *Edry v Adelman*, 486 Mich 634, 641; 786 NW2d 567 (2010) (explaining that peer-reviewed, published literature is not always necessary or even sufficient to establish the requirements of MRE 702).

[11] We accordingly reject defendant's argument that trial court improperly delegated its decision-making authority to Franqui. See *Kuebler v Kuebler*, 346 Mich App 633, 699; 13 NW3d 339 (2023) (explaining that a trial court must reach its own conclusions on the issues presented in a child-custody dispute). See also *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 121; 559 NW2d 54 (1996); *Harvey v Harvey*, 470 Mich 186, 187; 680 NW2d 835 (2004). The trial court in this case analyzed the evidence before it and rendered an independent conclusion on whether defendant's abuse allegations were supported by clear and convincing evidence. That evidence included not only the testimony of Franqui, but the testimony of Wristen, the DCF investigators, ASK's pediatrician (Dr. Connolly), and Dr. Norat.

There is also no evidence in the record to support defendant's theory that the trial court's decision was the result of "confirmation bias" or borne from a desire to punish defendant for "false sex abuse allegations." Defendant posits that once plaintiff developed the idea that defendant had fabricated the abuse allegations, the court sought data to confirm that "initially developed hypothesis," but these assertions are simply not corroborated by the record.

finding was not palpably or grossly violative of fact or logic, and the facts did not clearly preponderate in the opposite direction.[12]

## C. THE COURT'S EVIDENTIARY-HEARING SCHEDULE

Next, defendant agues the trial court abused its discretion by limiting witness testimony at the evidentiary hearing.[13] We disagree.

We review for an abuse of discretion the trial court's exercise of discretion and power in relation to matters of trial conduct. *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995).

A trial court generally has wide discretion and power in terms of trial conduct, but that discretion is not unlimited. *Paquette*, 214 Mich App at 340. At the time of the evidentiary hearing, MRE 611(a) provided:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. [MRE 611, as amended August 25, 2009, 485 Mich cccix (2012).]

This Court has addressed the scope of MRE 611 in several cases. In *Hartland Twp v Kucykowicz*, 189 Mich App 591, 595-596; 474 NW2d 306 (1991), this Court held that the trial court properly exercised its discretion when it started to limit the parties to one hour of direct examination and one hour of cross-examination on day five of trial after the parties took several days of trial to examine one witness. In *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 616; 792 NW2d 344 (2010), the trial court limited the direct and cross-examination of a witness "to '[a]n hour a side.' " The trial court did not initially enforce its one-hour rule, but later the court limited the testimony of additional witnesses to 45 minutes per side. *Id*. at 616-617. On appeal, this Court held that the record supported that counsel had enough time to develop the facts and issues at the center of the dispute, so the trial court did not abuse its discretion by limiting the parties' examination of certain witnesses. *Id*. at 618. In contrast, in *Barksdale v Bert's Marketplace*, 289 Mich App 652, 657; 797 NW2d 700 (2010), this Court held that the trial court lacked a reasonable basis for limiting witness examinations to 30 minutes per side when the parties had not previously wasted time in the trial.

---

[12] Considering this conclusion, we need not discuss plaintiff's argument on cross-appeal in Docket No. 369635 that the trial court abused its discretion by admitting the *de bene esse* deposition transcripts of Dr. Narasimhan and Kvies because any error was harmless.

[13] We reject plaintiff's argument that this Court lacks jurisdiction over this issue. This Court had the power to extend its grant of leave to appeal over this issue under MCR 7.216(A)(7), which it did in *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered July 2, 2024 (Docket Nos. 369562, 369563, 369634, 369635, and 369931).

Defendant's argument on this issue is not well-developed. Defendant contends that the trial court's imposition of time limits on the witness testimony and the court's decision on which witnesses were allowed to testify at the evidentiary hearing violated defendant's due-process rights. Yet she fails to cite one piece of evidence that the court did not allow her to present. Nor does she identify one witness whose testimony the court excluded because of the time parameters. Defendant maintains that she sought to include expert testimony from an autism expert, but the motion defendant cites to support that she requested to present additional expert testimony does not support her assertion. Additionally, defendant recognizes that the court was already aware that ASK had autism when the court ruled on the issue, and the testimony of the autism expert was not relevant to whether ASK was harmed while in plaintiff's care. To the extent the issue was ever brought to the court's attention, no plain error occurred in relation to defendant's alleged request for an autism expert.

Setting aside defendant's failure to develop this issue, the record supports that the trial court had a reasonable basis for creating a witness schedule and imposing a one-hour time limit on the witness testimony. Not only did this matter involve a complex issue requiring 15 witnesses (in addition to defendant and plaintiff), but the court had temporarily suspended plaintiff's parenting time while the evidentiary hearing was being conducted. Thus, the trial court had a reason to conduct the evidentiary hearing as expeditiously as possible to avoid wasting needless time.

Perhaps more importantly, the trial court was not rigid in its time parameters and regularly allowed the parties to go well beyond the time limits the court set for direct and cross-examination. When the parties raised the issue of the time allotment during the second day of the evidentiary hearing, the court explained, "We have been outside the scheduling order for pretty much the whole—the Court tries to catch up and then we get behind." Yet the court noted: "And—but I have tried to get in all of the testimony. And even when you're over the time, I allow you to continue to ask your questions so that you can—that you would be able to cross-examine the witnesses." The court said that it would only curtail the examination "[w]hen it gets cumulative."

Afterwards, the court continued to not rigidly enforce the scheduling order and permitted the parties to continue their examination even when the time limits had expired. The second day of the evidentiary hearing lasted nearly 12 hours, and the court heard testimony until approximately 8:15 p.m. Then, when the parties requested additional testimony, the court extended the evidentiary hearing to November 29, 2023, where it heard the videos of the *de bene esse* depositions of Dr. Narasimhan and Kvies. And the court conducted yet another hearing on November 30, 2023, where it heard testimony relating to the best interests of the child. Defendant does not cite one prejudicial instance where she intended to examine a witness in further detail but the court did not allow her counsel to do so. See *Dunn v Bennett*, 303 Mich App 767, 775; 846 NW2d 75 (2014) ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position.") (quotation marks and citation omitted). On these facts, there is no basis to conclude that the trial court abused its discretion.

## D. ADMISSION OF PHOTOGRAPH

Finally, defendant argues that the trial court abused its discretion by refusing to admit an August 27, 2023 photograph she took of ASK's anus. We disagree.

-13-

We review for an abuse of discretion the trial court's decision to admit or exclude evidence, but any preliminary legal questions relating to the admissibility of the evidence is reviewed de novo. *Kuebler*, 346 Mich App at 653.

In general, relevant evidence is admissible at trial or an evidentiary hearing. *Id*. at 654, citing MRE 402. Relevant evidence is evidence that has any tendency to make a fact more or less probable than it would be if the evidence were not admitted, and the fact is a fact of consequence in the case. MRE 401.

The trial court admitted and reviewed photographs of ASK's anus and buttocks from August 25, 2023 (the date that defendant took ASK to the emergency room), which were discussed during Dr. Levine's testimony. The at-issue photograph was taken two days later, and defendant does not provide any evidence to support her theory that the condition of ASK's buttocks two days after he returned from parenting time with plaintiff would have any bearing on the issue whether the bluish discoloration seen on his buttocks and anus was a healing bruise or venous pooling (the central dispute at the evidentiary hearing). While defendant's counsel represented that Dr. Levine had reviewed the photograph before the evidentiary hearing, none of the experts, including Dr. Levine, testified that he or she relied on the photograph when forming an opinion. Nor was the photograph offered into evidence during Dr. Levine's testimony—it was offered during defendant's testimony, which took place after Dr. Levine testified. Additionally, none of the investigators reviewed the August 27 photograph. The trial court accordingly did not abuse its discretion by finding the August 27 photograph irrelevant and inadmissible.[14]

## IV. MAKEUP PARENTING TIME

In Docket No. 371752, defendant argues that the trial court reversibly erred by awarding plaintiff 38 days of makeup parenting time. We disagree.

In addition to the standards of review discussed earlier in relation to parenting time, we review de novo issues of statutory interpretation. *Pueblo v Haas*, 511 Mich 345, 354; 999 NW2d 433 (2023). " 'The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language.' " *Woodman v Dep't of Corrections*, 511 Mich 427, 440; 999 NW2d 463 (2023) (citation omitted).[15]

---

[14] Even if the court did err by excluding the photograph, we would conclude that, after comparing the minimal probative value of the photograph with the voluminous testimony and evidence supporting plaintiff's position on the issue, the error was harmless. See *Guerrero v Smith*, 280 Mich App 647, 655; 761 NW2d 723 (2008).

[15] For the reasons discussed earlier, we decline to consider plaintiff's argument that defendant waived this issue by signing a temporary consent order. Nor are we persuaded that the issue is rendered moot by the fact that plaintiff's makeup parenting time will occur by February 2025, considering that the trial court may order defendant to have remedial parenting time.

MCL 552.642 is the statute that authorizes a parent to receive makeup parenting time. *Ewald v Ewald*, 292 Mich App 706, 718; 810 NW2d 396 (2011). The relevant provision of the statute, MCL 552.642(1), provides:

> Each circuit shall establish a makeup parenting time policy under which a parent who has been wrongfully denied parenting time is able to make up the parenting time at a later date. The policy does not apply until it is approved by the chief circuit judge. A makeup parenting time policy established under this section shall provide all of the following:

> (a) That makeup parenting time shall be at least the same type and duration of parenting time as the parenting time that was denied, including, but not limited to, weekend parenting time for weekend parenting time, holiday parenting time for holiday parenting time, weekday parenting time for weekday parenting time, and summer parenting time for summer parenting time.

> (b) That makeup parenting time shall be taken within 1 year after the wrongfully denied parenting time was to have occurred.

> (c) That the wrongfully denied parent shall choose the time of the makeup parenting time.

> (d) That the wrongfully denied parent shall notify both the office of the friend of the court and the other parent in writing not less than 1 week before making use of makeup weekend or weekday parenting time or not less than 28 days before making use of makeup holiday or summer parenting time.

Resolution of the parties' arguments relating to this issue hinges on the definition of the term "wrongful." Under defendant's interpretation, the suspension of plaintiff's parenting time was not "wrongful" because defendant had evidence to support her allegations against plaintiff, and the trial court's order temporarily suspending plaintiff's parenting time was an appropriate exercise of the court's power to issue ex parte and temporary orders. Plaintiff, in contrast, argues that the suspension of his parenting time was wrongful because (1) the facts did not establish, by clear and convincing evidence, that ASK was abused in plaintiff's care; and (2) the court suspended plaintiff's parenting time on an ex parte basis before conducting an evidentiary hearing or permitting plaintiff to answer the motion. We conclude that plaintiff has the better argument.

Dictionaries, which can be useful when considering a word's common usage, see *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 440; 716 NW2d 247 (2006), define "wrongful" as "wrong" and "unjust," and it defines "wrong" as "an injurious, unfair, or unjust act: action or conduct inflicting harm without due provocation or just cause." *Merriam-Webster's Collegiate Dictionary* (11th ed). A legal dictionary similarly defines "wrongful" as "[c]haracterized by unfairness or injustice." *Black's Law Dictionary* (11th ed). Under each definition, the focus is on whether the conduct at issue was unfair or unjust.

The wrongful aspect of the denial of parenting time focuses on whether the deprivation itself was unjust or unfair, not on whether the other parent engaged in wrongdoing to secure the deprivation. This interpretation aligns with the language of MCL 552.642, which does not state

-15-

that the denial of parenting time must be the result of the other parent's conduct. Nor does the statute require any form of misrepresentations or state of mind on the part of any person who deprived the parent of their parenting time, and it does not examine the procedure that occurred before the deprivation. See MCL 552.642. So regardless of whether defendant was aware of the results of the CPT investigation before or shortly after she moved to suspend plaintiff's parenting time temporarily, there is no dispute that plaintiff's parenting time was suspended on the basis of allegations that were later found not to be supported by clear and convincing evidence.

As plaintiff notes, although he exercised holiday parenting time with ASK for one week in December 2023, his regular parenting time did not resume until after the trial court entered the January 26, 2024 order. Considering the trial court's November 27, 2023 ruling, plaintiff's parenting time never should have been suspended, and plaintiff should have been exercising parenting time for the entire period his parenting time was suspended (a period of over 2½ months between the ex parte temporary suspension order and the order denying defendant's motion to suspend plaintiff's parenting time). While the court's decision to temporarily suspend plaintiff's parenting time pending the abuse allegations may have been reasonable when made, the deprivation of parenting time ultimately proved to be unfair to plaintiff and ASK considering the lack of clear and convincing evidence supporting the abuse allegations. For these reasons, the trial court did not commit a legal error or abuse its discretion by awarding makeup parenting time.[16]

Defendant points out that MCL 552.642(1)(b) provides that the court's makeup parenting-time policy must provide "[t]hat makeup parenting time shall be taken within 1 year after the wrongfully denied parenting time was to have occurred." Defendant contends that the trial court's award of makeup parenting time violated this provision because the order suspending plaintiff's parenting time ended when the trial court entered the November 27, 2023 orders, but plaintiff had makeup parenting time through February 2025.

We disagree because the November 27, 2023 orders did not resume plaintiff's parenting time with ASK—the court did not enter the parenting-time order establishing a new parenting-time schedule until January 26, 2024, and amended that order on February 2, 2024. In the meantime, plaintiff exercised only one week of holiday parenting time under the court's March 2023 custody judgment. The makeup parenting time was scheduled to occur no later than February 2025, with two additional days of parenting time occurring in February 2025. Those two days did not need to occur any later than February 2, 2025, which was the date of the court's amended opinion and order. Under these circumstances, the makeup parenting time was scheduled to occur within one year, as required under MCL 552.642(1)(b).

Finally, defendant argues the trial court's makeup parenting-time award violated MCL 522.642(1)(d), which provides that the trial court's makeup parenting-time policy require

> that the wrongfully denied parent shall notify both the office of the friend of the court and the other parent in writing not less than 1 week before making use of

---

[16] Defendant argues that makeup parenting time was improper because the suspension of plaintiff's parenting time "was the product of judicial action." That assertion is debatable, but even if true, the suspension of plaintiff's parenting time was still "wrongful" under the statute.

makeup weekend or weekday parenting time or not less than 28 days before making use of makeup holiday or summer parenting time.

While this requirement must apply to the court's makeup parenting time policy, the statute does not require the court to state this requirement in its makeup parenting-time orders. The court's order was clear that plaintiff could either exercise the makeup time before or after his regularly scheduled parenting time in Michigan, and the order was silent on how much notice plaintiff had to provide in relation to his intention to exercise makeup parenting time in Michigan. Therefore, the court's order did not violate MCL 522.642(1)(d).

For these reasons, the trial court did not commit a clear legal error or abuse its discretion by awarding plaintiff 38 days of makeup parenting time.

## V. CHILD SUPPORT

In Docket No. 371752, defendant argues that the trial court abused its discretion by denying her request to modify child support to reflect the temporary reduction to plaintiff's parenting time from June 2023 through February 2024. We disagree.

We review a trial court's child-support ruling, including its orders on a request to modify child support, for an abuse of discretion. *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012). For purposes of this issue, "[a]n abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). We review for clear error the trial court's factual findings. *Clarke*, 297 Mich App at 179. This Court reviews de novo the interpretation and application of the Michigan Child Support Formula (MCSF). *Id*.

The parents of a minor child have a duty to support the child, MCL 722.3(1), and a child has the right to receive financial support from his or her parents, which the trial court may enforce through an award of child support. *Borowsky*, 273 Mich App at 672-673. "However, once a trial court decides to order the payment of child support, the court must 'order child support in an amount determined by application of the child support formula . . . .' " *Id*. at 673, quoting MCL 552.605(2). The court must comply strictly with the MCSF requirements unless the court determines that application of the MCSF would be unjust or inappropriate under the facts of the case. *Borowsky*, 273 Mich App at 673. The party who appeals the child-support order bears the burden to establish the trial court made a mistake. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007).

After a child-support order has been entered, a court can modify the order if the modification is justified because of changed circumstances. *Kosch v Kosch*, 233 Mich App 346, 350; 592 NW2d 434 (1999). See also MCL 552.517b(8). "Once a petition for modification is filed, the court must hold an evidentiary hearing if the parties fail to consent to the modification and there exists a factual dispute concerning the circumstances relating to the petition for modification." *Varga v Varga*, 173 Mich App 411, 415-416; 434 NW2d 152 (1988).

Generally, under MCL 552.603(2), a court cannot retroactively increase or decrease child support payments. *Clarke*, 297 Mich App at 187. However, "the retroactive modification of a child support order is permitted for the period during which there is a pending petition for

modification," starting from the date that notice of the petition was given to the payer or recipient. *Id*. The court has discretion to determine whether to apply a modification to child support retroactively, but is limited to applying MCL 552.603(2) as written. *Id*.

In support of her argument on appeal, defendant relies on 2021 MCSF 3.03(D), which is a provision of the MCSF that was in effect at the time of the trial court's ruling. It provided:

> If a substantial difference occurs in the number of overnights used to set the order and those actually exercised (at least 21 overnights or that causes a change of circumstances exceeding the modification threshold [2021 MCSF 4.05]), either parent or a support recipient may seek adjustment by filing a motion to modify the order. [2021 MCSF 3.03(D).]

The issue of child support has a complex procedural history in the trial court, which likely led to the confusion on which version of the UCSO governed child support. The March 22, 2023 custody judgment ordered an FOC investigation before the final custody order would be entered, and ordered that child support would begin on June 1, 2022. On June 5, 2023, this Court entered an order in *Kleinfeldt I* that required the trial court to enter an interim parenting-time order allowing plaintiff to exercise meaningful parenting time. *Kleinfeldt COA Order I*, unpub order at 1. Later that month, the court conducted a hearing on plaintiff's motion to return ASK to Michigan for Father's Day and for other parenting time in Michigan. The trial court then granted plaintiff parenting time for Father's Day and outlined a parenting-time schedule for plaintiff's exercise of parenting time for the remainder of the summer of 2023.

On June 22, 2023, the trial court's judicial staff attorney sent an email to counsel on the judge's behalf requesting that the parties submit a modified parenting-time order adjusting the overnight visits to plaintiff in accordance with the court's ruling on the record. The email stated that the court would enter the UCSO upon receipt of a protective order relating to plaintiff's financial information. A few days later, on June 28, 2023, defendant moved for entry of a modified UCSO based on the court's June 22, 2023 email. At the time, the trial court had not yet entered the final UCSO following the custody trial.

The court entered a final UCSO on July 5, 2023, which provided for a monthly support obligation of $5,754. But the court removed the July 5, 2023 order from the court file on July 10, 2023, because it was filed improperly. On July 6, 2023, the court entered a more detailed parenting-time schedule for the remainder of the summer and early fall of 2023, which the court had originally articulated at the June 21, 2023 hearing. This is the schedule under which defendant argues that plaintiff's overnight visits decreased from 182.5 to 120 overnights. On July 17, 2023, more than 10 days after the court modified the parenting-time schedule at this Court's direction, the trial court entered the final UCSO, which reflected that plaintiff had 182.5 overnight visits with ASK and that his monthly support obligations would be $5,754.

On July 6, 2023, defendant filed a renewed motion for entry of a modified UCSO, noting that the interim parenting-time order gave plaintiff 120 overnight visits with ASK. Obviously, this motion was filed before entry of the July 17, 2023 final UCSO. Defendant's proposed amended order increased plaintiff's monthly child-support obligation to $10,191. On July 19, 2023—two days after the final UCSO order was entered—the court's judicial staff attorney emailed the parties

again, clarifying that they must submit an interim UCSO consistent with the interim parenting-time order. Neither party submitted a revised UCSO following this email.

During hearings in September and October 2023, the child-support issue was discussed, and the trial court adjourned the issue for an evidentiary hearing in late November 2023. However, after the suspension-of-parenting-time issue took up most of the court's time in the fall of 2023, the court did not decide the child-support issue until early 2024.

In its February 2, 2024 amended opinion, the court found that defendant did not move to modify the child-support order until September 6, 2023, when plaintiff's parenting time was temporarily suspended. The court explained that it rescinded its order temporarily suspending plaintiff's parenting time because it concluded that defendant's abuse allegations were not substantiated. And the court reasoned that plaintiff should not be faulted for the time it took to resolve the issue, so the child-support calculation would use the parenting-time offset in the judgment of custody.

As it relates to the period between June 2023 and September 2023, defendant argues that she moved to modify child support, but both defendant's June 28, 2023 motion and her July 6, 2023 motion were filed before the court entered a revised UCSO on July 17, 2023, and defendant did not move again to modify the UCSO until September 2023. Defendant's attempts to revise the UCSO before the court entered the final UCSO were insufficient to bring the issue before the court.

Defendant alternatively maintains that she did not need to move for modification of the child-support award because the trial court found changed circumstances warranting a change in child support. Defendant is presumably referring to the trial court's July 6, 2023 order, which provided a temporary parenting-time schedule for the summer and early fall of 2023, and she relies on MCL 552.517b to support this theory. MCL 552.517b(7) provides, "The court shall not require proof of a substantial change in circumstances to modify a child support order when support is adjusted under [MCL 552.517(1)]." MCL 552.517(1)(b) and (e), collectively, provide that after a final judgment containing a child-support order is entered in a case involving the FOC, the FOC must periodically review the order (1) upon receiving a written request from either party or (2) at the direction of the court. Here, however, the court never directed the FOC to modify child support, and neither party submitted a written request to the FOC.

For these reasons, the trial court did not clearly err when it found that defendant failed to move to modify the child-support award following the entry of the final UCSO. The court also did not abuse its discretion by refusing to modify retroactively the child-support obligations for the early summer of 2023. See *Clarke*, 297 Mich App at 187.

As it relates to the period between defendant's September 6, 2023 motion to temporarily suspend plaintiff's parenting time and the court's February 2, 2024 amended opinion, during which plaintiff exercised only one week of parenting time, the court appropriately exercised its discretion by denying defendant's motion for modification of child support. As the trial court reasoned, the court ultimately found that defendant did not establish by clear and convincing evidence that ASK would be harmed if plaintiff exercised parenting time and rescinded the temporary suspension. There was no parenting-time order in place between November 27, 2023 and January 26, 2024

-19-

because the court had not engaged in the required parenting-time analysis following entry of the interim parenting-time order in the summer of 2023. Because the allegations against plaintiff were not substantiated, ASK had the right to parenting time with plaintiff, and the court resumed parenting time under a new schedule. Under these circumstances, the court did not abuse its discretion by concluding that plaintiff should not bear a financial burden for the period his parenting time was temporarily suspended, nor did the court abuse its discretion by refusing to apply the requested child-support modification retroactively to the period before the September 6, 2023 motion. See *id*.; MCL 552.603(2).

## VI. PSYCHOLOGICAL EVALUATIONS

In his cross-appeal in Docket No. 369635, plaintiff argues that the trial court abused its discretion by ordering him to undergo a psychological evaluation. We disagree.[17]

The trial court has discretion to order a psychological evaluation, so this Court will review the issue for an abuse of discretion. See *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). The default abuse-of-discretion standard for issues other than a child-custody decision examines whether the trial court's decision fell outside the range of reasonable and principled outcomes. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018).

MCL 722.27 relates to the powers of the trial court in a child-custody dispute. The statute provides, in relevant part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> * * *
>
> (d) Utilize a guardian ad litem or the community resources in behavioral sciences and other professions in the investigation and study of custody disputes and consider their recommendations for the resolution of the disputes.
>
> (e) Take any other action considered to be necessary in a particular child custody dispute. [MCL 722.27(1)(d)-(e).]

By its plain terms, this statute permits a trial court in a child custody dispute to utilize behavioral-health or mental-health professionals to investigate the custody dispute and consider their recommendations. The statute does not limit a trial court to exercising this authority only on the

---

[17] We reject defendant's jurisdictional challenge relating to the scope of plaintiff's cross-appeal because we conclude that our exercise of jurisdiction over the issues raised on cross-appeal is appropriate on the basis of *Costa v Community Emergency Med Servs, Inc*, 263 Mich App 572; 689 NW2d 712 (2004), aff'd in part and remanded 475 Mich 403 (2006).

motion of a party, nor does the statute require the trial court to find good cause to support ordering a psychological examination.

MCR 2.311(A) relates to physical or mental examinations of individuals in civil matters, and it *does* require a motion and good cause to order such an examination, stating:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. *The order may be entered only on motion for good cause* with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. [Emphasis added.]

MRE 706 relates to court-appointed expert witnesses. MRE 706(a) provides, in relevant part: "On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing."

When read together, MCR 2.311 and MRE 706 require the trial court to find good cause to appoint an expert or submit a party for a psychological examination. A court rule may govern matters in which the controlling statute is silent. See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 190; 732 NW2d 88 (2007) (discussing this principle in the context of a no-fault case). Because MCL 722.27 does not provide a legal framework for the trial court to determine when it is appropriate to order a psychological examination, MCR 2.311(A) applies on this issue to the extent it requires a good-cause finding.

We disagree with plaintiff's argument, however, that the trial court could not order a psychological evaluation without a motion. While MCR 2.311(A) requires a motion and notice to the party to be examined, it is a broad discovery rule that applies in all civil cases. MCL 722.27(1)(d) and (e), in contrast, grant extensive authority to trial courts in child-custody disputes to take necessary actions that are in the child's best interests, including utilizing behavioral-science resources and recommendations for the resolution of disputes. While we agree with plaintiff that the court had to have good cause for ordering the evaluation for the reasons stated earlier, we disagree that the court lacked authority to sua sponte order the evaluation because MCL 722.27 grants the court that broad authority.

As for the good-cause issue, for purposes of the Michigan Court Rules, the phrase "good cause" has been defined to mean "a satisfactory, sound or valid reason." *Burris v KAM Transp, Inc*, 301 Mich App 482, 488; 836 NW2d 727 (2013) (quotation marks and citation omitted). The trial court has "broad discretion" when deciding what constitutes good cause, including in the context of ruling on a motion under MCR 2.311(A). *Id.*

Here, the court indicated that it had relied on the testimony of Sanchez in relation to the CPT findings, as well as the testimony of Franqui and both parties, to support its ruling. Neither

Sanchez's testimony nor Franqui's testimony could support the trial court's ordering a psychological evaluation for plaintiff considering that Franqui did not communicate with plaintiff at all, and Sanchez was unable to contact him. The court did not specify in this part of its opinion which portion of the testimony of the parties that it relied on to order the psychological evaluation, but elsewhere in its opinion, the court explained:

> The Court has concerns that both parties use the Court in an abusive manner. The Court has concerns that both parties are more concerned with their disdain for one another, that they make every effort to impede one another and if not addressed, their antics will interfere with the needs of ASK. [Footnote omitted.]

This finding was well-supported by the parties' testimonies (as well as the register of actions), and it provided a satisfactory and sound reason for the court to order a psychological evaluation to determine if there may be a mental basis for plaintiff's behavior. The court had broad discretion in this regard, and considering that it identified a satisfactory reason to order the psychological evaluation, the court did not abuse its discretion by ordering one.

## VII. CONTEMPT

In Docket No. 371076, plaintiff appeals an order finding him in contempt of court. Plaintiff argues that the trial court abused its discretion by finding him in contempt of court for violating (1) the holiday parenting-time schedule, (2) the caregiver-notice provision of the August 1, 2023 order, and (3) the healthcare-provider provision of the August 1, 2023 order. We disagree.[18]

We review for an abuse of discretion a trial court's contempt order. *Porter v Porter*, 285 Mich App 450, 454; 776 NW2d 377 (2009). In this context, an abuse of discretion occurs "when the trial court's decision is outside the range of principled outcomes." *Id*. at 455. A trial court's factual findings are reviewed for clear error, and questions of law are reviewed de novo. *Id*. at 454-455. Whether an issue is moot is also reviewed de novo. *Garrett*, 314 Mich App at 449.

Defendant argues that this appeal is moot because plaintiff voluntarily paid defendant the sanctions associated with the contempt order before the 21-day automatic stay of the order expired. While the "voluntary satisfaction of a judgment may render a case moot," payment "following the invocation or threatened exercise of a court's contempt power should not be regarded as voluntary or as constituting a waiver of the right to challenge the court's order." *Trahey v Inkster*, 311 Mich App 582, 591; 876 NW2d 582 (2015) (quotation marks and citation omitted). Plaintiff paid the contempt sanctions after the trial court invoked its contempt power ordering him to do so. Under

---

[18] We reject defendant's argument that this Court lacks jurisdiction over the appeal in Docket No. 371076 because the May 22, 2024 order was not a final order. Defendant argues that the court did not include the amount of the sanctions awarded resulting from plaintiff's civil contempt, but we conclude that the order at issue is a final order despite this because the dollar amount is not the issue that is pending for decision of the trial court. In other words, this is not a case where an order determining the amount of the fees and costs will be entered later, after which the parties could claim another appeal of right.

these circumstances, plaintiff's voluntary payment of the amount defendant requested does not render his appeal moot.

Before turning to each individual sanction, we address plaintiff's argument that the trial court's contempt orders were criminal, not civil, in nature. "Contempt can either be civil or criminal in nature." *In re Contempt of Murphy*, 345 Mich App 500, 503; 7 NW3d 72 (2023). Criminal contempt is punitive and, as such, is punishable by fine, imprisonment, or both. *Porter*, 285 Mich App at 455 Civil contempt, in contrast, is remedial in either a coercive sense (attempting to bring an uncooperating party into compliance "with a present or future obligation") or a compensatory one (reimbursing the "the complainant for costs incurred by the contemptuous behavior"). *Id*. The label attached to a contempt order is not dispositive on this issue. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 666; 997 NW2d 511 (2022).

The contempt orders at issue were clearly civil in nature because the remedy was that plaintiff would pay defendant's attorney fees associated with the filing of the emergency motion for the return of ASK, and that he would reimburse defendant for her expenses associated with traveling to Michigan to retrieve ASK. Plaintiff was not found to have committed a public wrong for which he was subject to a fine or imprisonment but simply ordered to reimburse defendant for costs incurred by his contemptuous behavior. Thus, the contempt was civil in nature, and defendant only had "the burden of proving by a preponderance of the evidence that the order was violated." *Porter*, 285 Mich App at 457.

## A. PARENTING-TIME VIOLATION

Turning to the merits, after two days of hearing testimony, the trial court first found plaintiff in contempt for failing to return ASK to defendant on December 31, 2023. The court ruled, "The Court finds that the Plaintiff is in civil contempt of court for failing to return ASK pursuant to the Judgment of Custody and the travel itinerary included in his motion." The court explained that plaintiff requested holiday parenting time and stated specific travel dates in his motion. He also included his travel itinerary as an exhibit to his motion, which included a return plane ride to Florida on December 31, 2023. The court stated, "The Court finds that the Plaintiff misled both the Court and the Defendant when he provided the travel itinerary as an exhibit to his motion." The court explained that it had reviewed the itinerary and ensured it complied with the March 22, 2023 custody judgment before granting plaintiff's motion for holiday parenting time.

The March 22, 2023 custody judgment outlined a holiday parenting-time schedule that included alternating holidays from Christmas Eve to New Year's Eve, with plaintiff receiving the parenting time "Christmas Eve-New Year's Eve (odd years)," and defendant receiving parenting time on even years. In accordance with the custody judgment, on December 12, 2023, plaintiff moved to compel defendant's compliance with the holiday parenting-time schedule. Exhibit 3 to plaintiff's motion was an email from Delta Airlines to plaintiff's counsel providing trip itinerary information for plaintiff and ASK, which, in relevant part, indicated that plaintiff booked a December 31, 2023 return flight from Michigan to Florida.

The court's ensuing December 15, 2023 order provided that plaintiff's motion was granted and stated in relevant part:

The Defendant shall exchange the minor child at the Palm Beach International Airport Delta Counter on December 24, 2023 at 1:15 pm consistent with the March 1, 2023 7-day Custody and Parenting Time Judgment. The Plaintiff shall have holiday parenting time from December 24, 2023 – December 31, 2023.

A court speaks through its written orders, *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009), and the December 15, 2023 order clearly required plaintiff to return ASK on December 31, 2023. This is particularly true given the context in which the order was issued, namely that plaintiff's motion that the court granted provided plaintiff's travel itinerary, which included a return trip to Florida on December 31, 2023. Consistent with this information, the court's order had an end date of December 31, 2023, which can only be interpreted as the court ordering plaintiff to return ASK on that date.

Plaintiff raises several arguments against this result, none of which have merit. Plaintiff claims that he sincerely believed that he had the right to keep ASK, but even if that is true, it does not change the fact that he violated the order. See *Pavlos-Hackney*, 343 Mich App at 648 n 1. Relying on the more detailed July 6, 2023 holiday parenting-time order, plaintiff argues that the comparative lack of details about pick-up and drop-off in the December 15, 2023 order supports that plaintiff had no obligation to return ASK on December 31, 2023. We reject this argument because, again, the December 15, 2023 order was clear that plaintiff had to return ASK on December 31, 2023. Plaintiff also stresses that he relied on the advice of his counsel when he failed to return ASK, but plaintiff's reliance on his attorney's advice does not provide a defense to his violation of a court order. See *Brown v Brown*, 335 Mich 511, 518-519; 56 NW2d 367 (1953).[19]

For these reasons, the trial court did not abuse its discretion when it ruled that defendant established by a preponderance of the evidence that plaintiff violated the court's prior holiday parenting-time orders.

## B. CAREGIVER-NOTICE PROVISION VIOLATION

Next, plaintiff challenges the trial court's ruling that plaintiff violated the caregiver-notice provision of the court's August 1, 2023 order, which provided: "[E]ach party shall provide to the other on Our Family Wizard, the names of each of AK's caregivers." In its May 6, 2024 order, the trial court ruled, "The Court finds that the Plaintiff violated the order by not providing the

---

[19] We also note that on December 29, 2023 (the Friday before the court's scheduled closure for the New Year's holiday), plaintiff's counsel sent an email to defendant's counsel stating, "Please advise if you are agreeable to [plaintiff] continuing parenting time following this holiday parenting time, which he would very much like to arrange." This request to extend plaintiff's parenting time belies plaintiff's position that he (or his counsel) sincerely believed that he had the right to exercise parenting time with ASK after his holiday parenting time ended on December 31, 2023.

Defendant with the name of Jen because ASK *has been left* in the care of Jen." The central dispute for purposes of this issue is the meaning of the court's use of the phrase "has been left."[20]

Plaintiff argues that the court's use of the phrase "has been left" suggests that plaintiff left ASK with Jen numerous times. That is simply incorrect. There is no dispute that ASK was left in Jen's care on one occasion, so the court's finding was not clearly erroneous.

Plaintiff points out that he was not home on the day in question because he was attending the court's August 21, 2023 virtual (Zoom) court hearing that ran late, but he provides no explanation for why he could not provide defendant with Jen's name through the OFW application during the hearing or shortly thereafter. And regardless, plaintiff's failure to provide defendant with Jen's name through the OFW application constitutes a violation of the court's order. For this reason, the court did not abuse its discretion by finding plaintiff in civil contempt of court of court.

## C. HEALTHCARE-NOTICE VIOLATION

The trial court also found plaintiff in contempt for taking ASK to Southfield Pediatrics in December 2023 without notifying defendant. The court found that this violated August 1, 2023 order, which provided that "[w]ithin 24 hours of each of the minor child's healthcare appointments, the parties shall respectively post updates on Our Family Wizard, and shall include any documentation received." There is no dispute that plaintiff took ASK to an appointment at Southfield Pediatrics at the end of December 2023. Plaintiff's appellate argument centers on whether the visit was a "healthcare appointment," and if so, whether plaintiff willfully violated the August 1, 2023 order by failing to inform defendant about the appointment.

The trial court's ruling was not an abuse of discretion. To start, the trial court did not clearly err by finding that the appointment at Southfield Pediatrics was indeed a healthcare appointment. The Southfield Pediatrics record reflects that ASK visited the practice several times in 2022, while defendant was still living in Michigan. The report reflects that the December 28, 2023 visit in question was a "2 yr Well Child" visit, and that a developmental screening occurred. The report states, in relevant part, "The patient is a 2 year, 5 month old male, accompanied by his father during the visit, presenting for a 2 year *well-child visit*." The report also reflects that the treating physician reviewed ASK's organ systems. The office also took ASK's vital signs, and measured his height and weight, and the physician examined ASK's ear, nose, and throat, chest and lungs, heart rhythm, abdomen, and reproductive system. Considering the ample evidence in the medical record that the physician performed a thorough healthcare examination on a

---

[20] As a threshold issue, plaintiff argues that the trial court "commandeer[ed]" the questioning of plaintiff during the show-cause hearing, which prejudiced his ability to testify on his own behalf. This issue is waived because plaintiff did not object to the trial court's questioning below. See *Glasker-Davis*, 333 Mich App at 227-228; *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). Even if not waived, the principle on which plaintiff relies for his argument applies in criminal jury trials, not civil contempt proceedings, so we would reject his argument on that basis.

preexisting patient, the trial court did not clearly err by crediting the report over plaintiff's testimony suggesting that the visit was a mere "meet-and-greet" to establish a provider relationship for purposes of referrals.[21]

Plaintiff maintains that the trial court relied solely on the fact that the medical record showed the visit was coded, for insurance purposes, as a "2 Yr Well Child (Z00.129)." But the trial court's opinion reflects that the court relied on the medical record as a whole, not simply the insurance code. The court did not even mention the insurance code in its opinion.

Plaintiff insists that he viewed the appointment as a meet-and-greet rather than a well-child visit, so he did not willfully violate the court order. But plaintiff's subjective belief about the purpose of the appointment did not abrogate his obligation to inform defendant about the appointment within 24 hours. Plaintiff further argues that he did not "conceal" the visit from defendant, so he should not be held in contempt of court. But this is not the standard outlined in the August 1, 2023 order. Rather, that order placed an affirmative obligation on plaintiff to notify defendant of the appointment within 24 hours through the OFW application.

Finally, plaintiff's reasons for attending the appointment are irrelevant to whether he violated the August 1, 2023 order. While his reasons for taking ASK to Southfield Pediatrics may have been well-intentioned, plaintiff did not notify defendant of the appointment within 24 hours through OFW, which violated the court's prior order. The trial court did not need to find that plaintiff violated the order willfully for purposes of civil contempt. For these reasons, the trial court did not abuse its discretion by finding plaintiff in civil contempt of court.

VIII. BOND

In Docket No. 371752, defendant argues that the trial court abused its discretion and violated her constitutional rights by requiring the parties to post a $1,500 bond as a condition precedent to filing any additional motions or pleadings in the case. Plaintiff concurs in this argument in his brief. We disagree.

We review for an abuse of discretion a trial court's decision to require a security bond. *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). For purposes of this issue, an abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Nahshal*, 324 Mich App at 710. Questions of constitutional law are reviewed de novo. *Janer v Barnes*, 288 Mich App 735, 737; 795 NW2d 183 (2010).

---

[21] Plaintiff suggests that the report was hearsay but does not raise any specific argument on appeal challenging its admission as such. See *Dunn*, 303 Mich App at 775 ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position.").

A trial court may require a party to post a bond as security for costs on its own motion. *Zapalski v Benton*, 178 Mich App 398, 404; 444 NW2d 171 (1989).[22] MCR 2.109(A) provides, in relevant part:

> On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion.

A court may impose a bond for security when there is a substantial reason to do so. *Farleigh v Amalgamated Transit Union, Local 1251*, 199 Mich App 631, 634; 502 NW2d 371 (1993). For example, a bond is appropriate if the legal theory of liability is tenuous, or a good reason exists to believe that the parties' allegations are groundless or unwarranted. *Surety Bond for Costs*, 226 Mich App at 331-332. If a court sets a bond, it may still "allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond." MCR 2.109(B)(1). Additionally, civil litigants have due-process rights, *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009), as well the right to access the courts, meaning that parties with nonfrivolous claims have the right to bring those claims in court, *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 436; 878 NW2d 891 (2015).

Both parties argue on appeal that the court's imposition of the bond requirement clashed with the parties' rights to access the courts and to have a meaningful opportunity to be heard. We disagree and find, instead, that the bond requirement was an appropriate exercise of the court's discretion considering the court's need to curb the voluminous filings in the case and the lack of any evidence suggesting that the $1,500 bond would be too onerous on the parties.

Defendant argues that the court's imposition of the bond would be burdensome on her, but as discussed later, defendant did not present evidence of her inability to pay her own attorney fees and costs. Nor did she move for reconsideration on the bond issue or file an affidavit supporting her inability to pay, as required under MCR 2.109(B)(1). While the trial court must weigh the need for the bond against the ability to pay, this Court has recognized that a party's interest in freely accessing the courts is less significant when there is a need for greater security. See *Hall*, 186 Mich App at 272. The trial court aptly noted that the parties are highly litigations. They have filed voluminous motions and pleadings in the court, the clear majority of which were denied and which have led to 13 appeals in this Court. The trial court needed three full pages of its opinion and order just to outline the motions that the parties had filed in the case. The court also provided that the bond would be returned if the moving party prevails on the motion. Under the circumstances, the court's ruling that a bond was necessary to curb the unnecessary filings and

---

[22] Published opinions of this Court decided before November 1, 1990, are not strictly binding, but they are considered precedent and entitled to a significantly greater deference than unpublished opinions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

preserve judicial resources did not fall outside the range of reasonable and principled outcomes and did not deprive the parties of their constitutional rights.

Defendant also argues that the court's ruling violated MCL 600.2529(1)(e), which provides that a moving party must pay a $20 filing fee for filing a motion. Defendant does not challenge the fact that MCR 2.109 would allow the trial court to impose a bond well beyond the $20 filing fee under MCL 600.2529(2), but argues that the trial court lacked authority to impose a bond on both parties when only defendant moved for imposition of a bond against plaintiff. But this Court has previously held that a trial court may require a party to post a bond as security for costs on its own motion. *Zapalski*, 178 Mich App at 404. Thus, the trial court's ruling did not violate MCL 600.2529 or the requirements of MCR 2.109.

Finally, defendant argues that the trial court is incentivized to deny motions so that the court could retain the $1,500 bond. The trial judge will not profit personally from the imposition of the bond. Rather, the court provided that the amount would be used to pay costs and other court-ordered expenses, or will be returned should the moving party prevail. Defendant's argument that the court had a personal incentive to deny motions is wholly without merit.

## IX. FRIVOLOUS-FILING SANCTIONS AGAINST PLAINTIFF

On cross-appeal in Docket No. 369635, plaintiff argues that the trial court erred by finding that plaintiff filed sanctionable objections to defendant's seven-day order following the January 2, 2024 emergency hearing on the motion to return ASK because plaintiff's arguments were well-grounded in fact and existing law.[23] We disagree.

This Court reviews for an abuse of discretion the trial court's inherent authority to sanction a party's misconduct. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 301; 14 NW3d 472 (2023). Similarly, this Court reviews for an abuse of discretion a trial court's decision to sanction a party for filing a frivolous document. *Id*. at 319. In this context, the default abuse-of-discretion standard applies, and "[a] trial court abuses its discretion when its decision falls outside the range of reasonable outcomes." *Id*. This Court reviews for clear error the trial court's finding on whether the conduct at issue was frivolous. *Id*. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake." *Id*. This Court reviews de novo whether the trial court properly applied the law. *Id*. at 301.

Plaintiff objected to defendant's proposed seven-day show-cause order following the court's January 2, 2024 emergency hearing on her motion to return ASK following plaintiff's parenting time. The court found plaintiff's objections to defendant's seven-day order frivolous

---

[23] We reject defendant's argument that plaintiff waived appellate review of this issue by failing to attach all necessary materials from the lower court record as appendices to the brief on cross-appeal. See MCR 7.212(J)(3)(e). The materials defendant relies on relate to the merits of her show-cause motions and are not relevant to the issue whether plaintiff's objections were frivolous. Additionally, the materials are readily available in the lower court record for our review.

under MCR 1.109(E), but did not specify whether it grounded its ruling on MCR 1.109(E)(6) or (7). Under either standard, however, the court properly found the objections sanctionable.

MCR 1.109(E)(5) provides, in relevant part, that when a person files a document with the court, the signature of that person is a certification that, among other things, "the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." MCR 1.109(E)(5)(b). MCR 1.109(E)(6) explains:

> If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.

MCR 1.109(E)(7) adds that in addition to sanctions outlined in MCR 1.109(E)(6), a party who pleads a frivolous claim or defense is subject to costs outlined in MCR 2.625(A)(2). MCR 2.625(A)(2) provides, "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) provides:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

When a court awards fees and costs under this statute, the amount of costs and fees "shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees." MCL 600.2591(2). MCL 600.2591(3) defines the term "frivolous" to mean at least one of the following: (1) "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party[;]" (2) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true[;]" or (3) "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). A "prevailing party" is "a party who wins on the entire record." MCL 600.2591(3)(b). Whether a claim was frivolous depends on the circumstances at the time the claim was asserted. *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

MCR 2.602(B)(3) outlines the process for serving a proposed judgment or order via the seven-day procedure. Under MCR 2.602(B)(3)(b), "[o]bjections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission." MCR 2.602(B)(3)(c) adds, "The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order." Objections under MCR 2.602 are limited to issues regarding form, and another court rule, MCR 2.119(F), allows the parties to move for reconsideration on the merits. See *Riley v 36th District Court Judge*, 194 Mich App 649, 651; 487 NW2d 855 (1992) (interpreting a prior version of MCR 2.602); MCR 2.602, as amended January 1, 2002, 465 Mich cxlv (2002) (incorporating

the language of "objections regarding the accuracy and completeness of the judgment or order," suggesting that the objections are limited to whether the proposed order is an accurate reflection of the court's ruling).

The reasons that the trial court found that plaintiff's objections were frivolous included that (1) plaintiff's objection failed to comply with the requirements of MCR 2.602(B)(3)(b) and (c); (2) plaintiff's objection failed to state the inaccuracy or omission in the proposed order with specificity; (3) plaintiff's objection failed to raise the issue of the burden that defendant was to carry at the show-cause hearing; and (4) plaintiff failed to provide an alternative order for the court to consider. We agree with the trial court's findings.

Plaintiff argues that the trial court clearly erred by finding that his objection was frivolous or otherwise sanctionable on the basis that plaintiff failed to provide an alternative order because the court stated it would enter its own order. After ruling that the court's previous orders had required plaintiff to return ASK to the airport on December 31, 2023, the trial court stated, "The Court is going to issue a motion [sic] and order to show cause in this matter." Plaintiff's interpretation of the court's statement is not reasonable considering that the court did not indicate that it would draft the order itself. That aside, once defendant submitted a proposed order via the seven-day process, MCR 2.602(B)(3)(c) required plaintiff to include an alternative order that would address the alleged deficiencies in defendant's proposed order. Therefore, the court did not abuse its discretion by finding that plaintiff violated the court rule by failing to provide an alternative order with his objection under the applicable rule.

The broader issue for purposes of sanctions, however, is the fact that plaintiff's objection was vague and did not assert the same grounds that he now raises on appeal. Plaintiff argues that defendant's proposed seven-day order omitted one of the three orders plaintiff was alleged to have violated, but plaintiff did not raise that specific issue in his objections. Rather, plaintiff made only vague assertions like "[t]he [proposed] order is also inaccurate as the Court did not cite the orders alleged as the basis for the show cause," and "[t]he Court has not issued an order that identifies with specificity the orders it relied upon as the basis for the show cause hearing and the issues to be addressed." These broad statements were not sufficient to inform the court of what omissions or inaccuracies plaintiff believed were in the proposed order.[24]

Plaintiff also argues that the proposed seven-day order did not specify whether the contempt was civil or criminal in nature, but plaintiff did not raise this specific deficiency in his objection either. The issue did not arise until the January 26, 2024 show-cause hearing. The trial court therefore did not abuse its discretion by granting defendant's request for her attorney fees as sanctions under MCR 1.109(E)(6).

To the extent that the trial court imposed sanctions under MCR 1.109(E)(7), which incorporates by indirect reference the frivolous-filing standard outlined in MCL 600.2591, plaintiff argues that defendant was not a "prevailing party" for purposes of MCL 600.2591(1) and (3)(b) because the court modified defendant's proposed order. To the extent the trial court granted

---

[24] And, again, plaintiff did not include an alternative proposed order from which the court could have gleaned his specific objections.

-30-

sanctions and found that the objections were frivolous under MCR 1.109(E)(5), the court did not need to find defendant was a prevailing party. Regardless, even assuming the court applied MCR 1.109(E)(7), which incorporates MCL 600.2591, defendant was the prevailing party on this issue. Plaintiff's proposed objections did not identify the errors in defendant's proposed order that he advances on appeal, and the errors in the proposed order did not become apparent until the court engaged in a discussion with counsel during the corresponding hearing. For this reason, the trial court denied plaintiff's objections completely because the court did not grant relief on the basis of any of the alleged errors plaintiff raised in his written objections. We conclude that, under these circumstances, defendant prevailed on the entire record as it relates to the objections plaintiff raised in his written filing. So even if the court considered the issue under MCR 1.109(E)(7), and not MCR 1.109(E)(6), the trial court did not abuse its discretion by granting defendant's request for her attorney fees incurred to respond to the objections as sanctions.

## X. PLAINTIFF'S SANCTIONS MOTION AGAINST DEFENDANT

Plaintiff additionally argues on cross-appeal in Docket No. 369635 that the trial court abused its discretion when it denied plaintiff's motion for sanctions for defendant's filing of a frivolous motion to suspend his parenting time. We disagree.

At the outset, we note that although plaintiff moved for sanctions under both MCR 1.109(E)(6) and (7), the court based its ruling on MCR 1.109(E)(6). We will therefore examine the issue under the same court rule, but note that our analysis would not differ significantly had we employed the frivolous-filing standard outlined in MCR 1.109(E)(7).

Plaintiff argues that the trial court abused its discretion when it ignored the testimony of Sanchez and her DCF supervisor Shannon McGighan,[25] which supported that defendant knew the CPT results when she moved to suspend plaintiff's parenting time. The most glaring flaw with plaintiff's argument is that the testimony of these witnesses did not establish the date on which defendant learned of the CPT examination results, so their testimonies do not provide direct evidence that defendant knew the CPT results before she moved to suspend plaintiff's parenting time. Their testimonies, at best, raise the possibility that defendant might have known the result of the CPT results, so the trial court did not err by refusing to consider their testimonies dispositive.

At any rate, even assuming for the sake of argument that defendant learned of the CPT results before she moved to suspend plaintiff's parenting time, plaintiff does not cite any legal support for his position that the CPT findings, considered alone, were dispositive on the issue of abuse. The CPT examination results were a significant piece of evidence supporting plaintiff's position, but there is no legal basis to find that the CPT results, considered alone, were dispositive. That is especially important here because defendant's allegations were supported by the testimony of Dr. Narasimhan and Kvies. For this reason, even assuming defendant knew the results of the

---

[25] While plaintiff faults the trial court for failing to elaborate on the testimony of Sanchez and McGighan, when a trial court makes factual findings, "[b]rief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2). The trial court therefore had no obligation to discuss the testimony or evidence the court did not find persuasive on the issue.

CPT examination before filing her motion, this would not have been a basis for the trial court to have found her motion in violation of the signature-certification requirements.

## XI.  DEFENDANT'S SANCTIONS MOTIONS AGAINST PLAINTIFF

In Docket Nos. 369563 and 369634, defendant raises several arguments relating to attorney fees.  Defendant first argues that the trial court abused its discretion when it denied her May 17, 2023 and November 15, 2023 motions for frivolous-filing sanctions.  We disagree.

### A.  MAY 17, 2023 MOTION

The basis for defendant's May 17, 2023 motion for attorney fees as frivolous-filing sanctions under MCR 1.109, MCR 2.625, and MCL 600.2591, was plaintiff's filing of three motions in April and May 2023 requesting parenting time with ASK.

The trial court's March 10, 2023 opinion and order addressed parenting time, and it included a provision that the parties would have equal parenting time in two-week increments, with ASK traveling between Michigan and Florida.  But uncertainty arose around the issue of parenting time after this Court entered an April 3, 2023 order, which provided, in relevant part, "The motion for stay [of] the trial court's March 10, 2023 opinion and order is GRANTED, and enforcement of that order is STAYED pending resolution of this application or further order of this Court." *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered April 3, 2023 (Docket No. 365506).  Following this Court's order, plaintiff filed two motions related to his ability to exercise parenting time under the March 22, 2023 custody judgment.

After accepting supplemental briefing on whether this Court's stay order extended to the March 22, 2023 custody judgment, the trial court denied both of plaintiff's motions.  In the court's April 21, 2023 order denying plaintiff's second emergency motion regarding parenting time, the trial court ruled that enforcement of the parenting-time provision of the custody judgment would violate this Court's stay order.  On May 10, 2023, this Court entered an order granting leave to appeal in Docket No. 365506, which again addressed the issue of parenting time. *Kleinfeldt COA Order II*, unpub order at 1.  This Court provided as follows regarding parenting time:

> Pursuant to MCR 7.205(E)(2), the Court orders that the portion of the trial court's March 10, 2023 order setting the parties' parenting time in two-week increments alternating between Florida and Michigan, which effectively requires the 22-month-old child to fly from Michigan to Florida or back every two weeks, is VACATED as an abuse of discretion. . . .  This Court's April 3, 2023 order staying enforcement of the March 10, 2023 opinion and order is now moot and DISSOLVED. [*Id.* (citations omitted).]

Following this Court's May 10, 2023 order, on May 15, 2023, plaintiff moved for makeup parenting time on the basis of this Court's directive in the May 10, 2023 order dissolving the stay, arguing that he was not receiving equal parenting time and had not seen ASK since March 2023.

Later, on June 5, 2023, this Court issued a third order granting in part a motion for reconsideration plaintiff filed in this Court and clarifying its May 10, 2023 order as follows:

The trial court's March 10, 2023 order is VACATED only to the extent it set the parenting time in two-week increments alternating between Florida and Michigan, which effectively required the minor child to fly from Michigan to Florida or back every two weeks. That schedule remains vacated as an abuse of discretion. . . . While this appeal remains pending the trial court is directed to issue an interim parenting time order allowing plaintiff meaningful parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and [plaintiff] without requiring excessive travel for the child. MCL 722.27a(1). [*Kleinfeldt COA Order I*, unpub order at 1.]

The overarching takeaway from this Court's May and June 2023 orders was that plaintiff was to have meaningful parenting time with ASK, but ASK should not bear the travel burden.

The issue whether the trial court properly denied plaintiff's motions for parenting time on the basis that this Court stayed enforcement of the parenting-time order came up in *Kleinfeldt I*. This Court held as follows:

Plaintiff is correct that a court speaks through its written orders and judgments. . . . However, the March 22 judgment states, "the Court having issued its opinion and order on March 10, 2023 and same being submitted pursuant to MCR 2.602(B)(3) as follows . . ." and it proceeded to itemize its orders regarding jurisdiction, custody, residence, domicile, parenting time, and attorney fees as stated in the March 10, 2023 opinion and order. *Therefore, any attempt by the trial court to enforce the orders contained in the March 22, 2023 judgment, which expressly referenced the March 10, 2023 opinion and order, would have violated this Court's stay issued on April 3, 2023, which was still in effect when the trial court denied plaintiff's motions.*

Likewise, because enforcement of the parenting-time provisions in the March 10, 2023 opinion and order had been stayed, the trial court did not err by denying plaintiff's motion to order defendant to show cause why she did not produce the child on April 8, 2023, pursuant to the trial court's parenting-time schedule, enforcement of which had been stayed. [*Kleinfeldt I*, unpub op at 24-25 (emphasis added).]

In the instant appeals, defendant relies on this Court's holding in *Kleinfeldt I* that plaintiff could not rely on the March 22, 2023 custody judgment to enforce parenting time while this Court's April 3, 2023 stay order was in effect to support that plaintiff's motions were futile. However, "[a] claim is not frivolous merely because the party advancing the claim does not prevail on it." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (citation omitted). Nor did this Court hold in *Kleinfeldt I* that plaintiff's position was frivolous.

We conclude that the issue was sufficiently complex such that plaintiff's argument was grounded in fact and law. In his supplemental brief, which the trial court invited, plaintiff argued that this Court's order stayed only the March 10, 2023 opinion and order, not the March 22, 2023 judgment. Plaintiff noted that defendant only appealed the March 10, 2023 order and did not seek a stay of the March 22, 2023 judgment. The gist of plaintiff's argument—which he supported with

appropriate authority—was that this Court has the power to stay all proceedings or just the one order, and this Court chose to do the latter in this situation. Plaintiff further argued that even though this Court had stayed the March 10, 2023 opinion and order, the trial court retained authority to administer the rest of the case. While the trial court and this Court ultimately deemed plaintiff's position incorrect, his position was grounded in both fact and law, and the trial court did not abuse its discretion by ruling that the motions were not frivolous for purposes of MCR 1.109(E)(7), MCR 2.625(A), and MCL 600.2591, or by ruling the signature on the motion was not a violation of MCR 1.109(E)(5) and (6).

We likewise reject defendant's contention that plaintiff took inconsistent positions in the trial court and in the appellate courts. Defendant's argument centers on plaintiff's statement in his emergency motion for reconsideration of this Court's April 3, 2023 stay order that the effect of the order was that "no parenting-time order in place." Plaintiff quickly tried to correct this statement, but this Court rejected plaintiff's errata because this Court had already decided plaintiff's motion for reconsideration. Considering plaintiff's swift attempt to correct the statement in his motion for reconsideration, we conclude that the trial court did not abuse its discretion by denying defendant's request for sanctions.

## B. NOVEMBER 15, 2023 MOTION

In her November 15, 2023 motion for sanctions, defendant argued that plaintiff made several misrepresentations in his motions warranting sanctions under MCR 1.109(E). She further argued that plaintiff's counsel made misrepresentations on the record during two court hearings.

### 1. DEFENDANT KNEW THERE WAS NO ABUSE ON AUGUST 25, 2023

Defendant first argues that the trial court clearly erred by finding plaintiff did not mispresent any facts in his motion for sanctions when he stated, "Defendant Stern knew on August 25, 2023—the same day she took the child to the emergency room—that he was not a victim of sexual abuse or physical abuse." In support of this assertion, plaintiff cited Franqui's CPT report dated August 25, 2023, which provided that there were no findings of physical or sexual. The trial court acknowledged that the evidence supported that defendant did not know about the CPT findings. However, the CPT report was dated August 25, 2023, and the court questioned whether defendant knew the results because of the language of the CPT report. The evidence presented at the evidentiary hearing established that Franqui did not make her final determination until later, so defendant did not learn on August 25, 2023, that CPT made a no-abuse finding. Regardless, the court explained: "[T]he Court was not misled because the document spoke for itself. We had to hear the testimony to know otherwise."

While plaintiff and his counsel made an inferential leap between the fact that the CPT report had a date of August 25, 2023, and the idea that defendant also learned of the CPT examination results on that date, the trial court determined that this was reasonable because it was only when Franqui testified that it became clear there was an error in her report. This conclusion was not outside the range of reasonable and principled outcomes.

-34-

## 2. DEFENDANT PURSUED THE POLICE WHO HAD CLOSED THE CASE

Next, defendant argues that the trial court clearly erred by finding nonfrivolous the following statement in plaintiff's motion for sanctions: "Instead of accepting these statements as fact, Defendant Stern repeatedly pursued the police department in Jupiter in the following days, and her persistence resulted in the police department still closing their case while informing her seven hours before she filed her motion on September 6, 2023 at 4:06 pm that the 'injuries' were in fact a 'healing rash'."

On this issue, the trial court ruled that the police report speaks for itself, and it showed that, while defendant may not have had contact with Jupiter Police Officer Gabriel DaSilva or Detective Hirsch, she had contact with other police officers. The court also explained that the Jupiter Police Department did close its case, transferring the case to Michigan. The court thus correctly concluded that plaintiff's statement with respect to these facts was not a misrepresentation.

Regarding whether the Jupiter Police Department indicated that the injuries were a healing diaper rash, the court held that issue in abeyance. It does not appear from the record that the court made an express finding on this statement, but the court's ruling can be inferred from the fact that it later denied defendant's motion for sanctions. Regarding the diaper-rash issue, Detective Hirsch stated on September 6, 2023, at around 9:02 a.m.:

> I later received the medical report form [sic] CPT, and in it Franqui reported no findings of sexual abuse. She reported that the injuries she saw to the child's anal area did not appear to be from trauma and it was plausible and very likely that the injuries were related to irritation and/or inflammation from a healing rash as history suggested.

Detective Hirsch stated, after discussing the transfer of the case to Michigan, "Nicole Stern was notified of the case status and given contact information for Captain Lunsford [sic]." Considering this record, plaintiff's statement that the police informed defendant that the injuries were a healing rash was reasonable considering that Detective Hirsch noted that Franqui concluded the injuries were very likely a healing rash and that Detective Hirsch informed defendant of the case status.

## 3. DETECTIVE HIRSCH TOLD DEFENDANT OF THE CPT FINDINGS

Defendant next challenges the trial court's ruling regarding plaintiff's statement that Detective Hirsch notified defendant on September 6, 2023, that there were no findings of sexual abuse. The court concluded on the record that the issue was "still to be determined." Again, the court did not return to this issue, but the court's findings can be inferred by the fact that the court later denied defendant's motion in its entirety. For the reasons discussed earlier, plaintiff's statement in his motion was a reasonable interpretation of Detective Hirsch's statements in the police report, and the trial court did not abuse its discretion by refusing to sanction plaintiff.

## 4. DEFENDANT'S KNOWLEDGE OF CPT NO-ABUSE FINDING

Next, defendant argues that the trial court clearly erred when it refused to find frivolous plaintiff's assertion in his motion for sanctions that defendant did not move to withdraw or correct her motion to suspend plaintiff's parenting time despite learning about CPT's no-abuse finding.

On this statement, the trial court ruled that the court was not misled by plaintiff's statement about defendant's knowledge of the CPT results because the court was able to hear the evidentiary-hearing testimony and ruled that defendant did not know about the CPT examination results when she moved to suspend plaintiff's parenting time. However, the court reasoned that plaintiff and his counsel had reason to believe that defendant did know about the CPT examination results because of the date of the CPT report. For the reasons discussed earlier, the trial court did not clearly err in its factual finding.

### 5. COMO CENTER

An allegation plaintiff made in his motion to rescind the order temporarily suspending his parenting time was that defendant refused to allow ASK to receive speech therapy at a Michigan-based entity referred to as the Como Center. The issue with ASK receiving treatment at the Como Center was the subject of another motion that is not otherwise relevant to these consolidated appeals. The parties and the court discussed the issue during a June 2023 hearing, and the trial court ordered that ASK would attend speech-therapy treatment at the Como Center, in Michigan, in addition to a treatment facility in Florida. During a July 2023 motion hearing, plaintiff had stated, under oath, that the Como Center therapist canceled an appointment after receiving "threatening e-mails" from defendant. During the hearing addressing defendant's motion for sanctions, the trial court explained the reason that the treatment at the Como Center had stopped was related to emails defendant sent the institution. Therefore, the court found that plaintiff did not misrepresent this issue.

Defendant acknowledges in her brief on appeal that she sent the provider emails asking "basic questions" but denies that she ever refused treatment from the Como Center. She argues instead that plaintiff testified during the evidentiary hearing on the motion to suspend his parenting time that the treatment ended because the Como Center became unavailable. However, in reviewing that testimony, the Como Center canceled one appointment on June 23, 2023, because of an emergency, but the situation would not explain why the Como Center canceled all future visits, which plaintiff testified earlier was because of defendant's conduct. When plaintiff attempted to explain why he had said that defendant's inappropriate email caused the demise of that relationship, plaintiff was cut off. Examining this record, the trial court did not clearly err when it found that plaintiff's argument was not frivolous.

### 6. APPOINTMENT WITH DR. GENDELMAN

Defendant next challenges the trial court's ruling regarding plaintiff's statement in his motion to rescind the order temporarily suspending his parenting time that defendant disrupted ASK's appointment with Dr. Gendelman and caused him to stop treating ASK. Defendant points out that plaintiff testified that he did not call defendant until after the appointment ended and reasons that she therefore could not have disrupted the appointment. However, the record supports that plaintiff called defendant while he was still with Dr. Gendelman. Dr. Gendelman testified that he perceived defendant as screaming and noted that she stated that he did not have her permission to treat ASK. Dr. Gendelman did not want to get involved in the conflict between the parties, and he decided that he did not want to continue to treat ASK due to defendant's conduct during the call. The trial court ruled on this issue that plaintiff's statement was not a misrepresentation because "Dr. Gendelman testified that [defendant] disrupted the visit. That's his testimony." The

court noted that while it had reviewed a video recording defendant took of the conversation, the video recording did not change Dr. Gendelman's testimony. This finding (that defendant disrupted the visit) was not a clear error considering Dr. Gendelman's testimony on the subject, and the trial court did not abuse its discretion in its dispositional ruling that plaintiff made no misrepresentation of fact.

### 7. STATEMENTS OF DCF AND CPT

Defendant also takes issue with plaintiff's statement that "[e]ven Florida's [DCF] and the [CPT] warned Defendant that her actions are creating conflict that 'predispose(s) the child to mental injury.' " On this issue, the trial court ruled that regardless of whether the advice at issue was a warning or simply a recommendation, the CPT report was admitted into evidence and speaks for itself. The court noted that the statement was made after interviewing defendant and without talking with plaintiff. Then the court acknowledged that it did not know if the record "necessarily says" that defendant's actions were creating conflict predisposing ASK to mental injury, but explained that the reports did mention that ASK was in the middle of the parties' dispute, and the record otherwise spoke for itself. On appeal, defendant does not dispute that the reports reflected that ASK was in the middle of the dispute between the parties. Rather, she disputes whether the discussion served as a "warning" and whether she "created conflict" with plaintiff. We agree with the trial court that it was a fair inference that defendant's actions were part of that reason ASK was in the "middle" of the parties. Therefore, the trial court did not clearly err by finding that plaintiff's statement was not a misrepresentation of fact warranting sanctions.

### 8. STATEMENTS ON THE RECORD

Defendant also argues the trial court abused its discretion when it found plaintiff's counsel did not make misrepresentations on the record. Plaintiff responds that defendant could not recover sanctions for statements his counsel made on the record. While that may be accurate for sanctions imposed under MCR 1.109(E)(1) through (6), it is not true for sanctions imposed under MCR 1.10(E)(7), which incorporates MCR 2.625 and, by extension, MCL 600.2591. See *Bradley v Frye-Chaiken*, 514 Mich 679, 705 n 21; ___ NW3d ___ (2024). Defendant did not cite a specific court rule when discussing the misrepresentations that she argues plaintiff's counsel made on the record, but she did cite MCL 600.2591 in her motion, and we will give defendant the benefit of the doubt that she intended to invoke MCL 600.2591 as the basis for the at-issue sanctions request.

Defendant argues that plaintiff's counsel made a false statement on the record during the September 18, 2023 proceeding when she stated, in relation to the period defendant had ASK in her custody on August 25, 2023, after plaintiff returned him from Michigan, as follows:

> [*Plaintiff's Counsel*]: That means between 1:43, when my client sent an OFW to her giving the update regarding the child and 4:30, an hour before she—at the time that she claims she discovered the injury, which was an hour before the 5:30 visit, that is when Ms. Stern whaled—either whaled on this child and caused an injury to this child's buttocks.

> *The Court*: Okay. But you–but [counsel].

Plaintiff's counsel later argued that she was cut off when making that statement and planned to say that, based on Wristen's testimony, defendant either "whaled on . . . or she let the child sit in the diaper for an extended period of time causing the injury."

While the court did not clearly say so, it can be reasonably inferred from the court's denial of defendant's motion that the court found that the at-issue statement was not a misrepresentation, and this finding was not clearly erroneous considering Wristen's testimony. When discussing the difference between blanchable and nonblanchable areas of redness, Wristen testified as follows:

> *Q*. Okay. And if someone were to swat or hit or something in an area on that child's buttocks or anal area, would that cause blanching or non-blanchable?
>
> *A*. Depends if it was recent and it's a fresh redness, the irritation to the skin, it may not blanch.

Wristen's testimony supported the suggestion by plaintiff's counsel that ASK could have been hit, particularly when counsel had said "either" in her statement, indicating she intended to provide the alternative that ASK could have also been sitting in a wet diaper for too long. In other words, counsel did not definitively state that defendant "whaled on" ASK.

Defendant also challenged several statements of plaintiff's counsel during the October 4, 2023 hearing, at which counsel suggested that defendant may be investigated in Michigan for her conduct related to ASK. During the hearing on defendant's motion for sanctions, the court acknowledged that there was no investigation into defendant but noted that plaintiff's counsel said "may," and "[s]he didn't say definitively that there was an investigation." The trial court did not clearly err when ruling in plaintiff's favor on this statement considering that counsel's comments expressed her opinion about a possible future event; counsel did not, at any point, state affirmatively that the police were investigating defendant.

Defendant also argues that plaintiff's counsel misrepresented the reason the Florida court dismissed her no-contact matter, saying that the court dismissed the case on the merits rather than for lack of jurisdiction. While the Florida court's order indicated that the court was dismissing the case for lack of jurisdiction, the court clarified that the issue came before it on plaintiff's motion to dismiss the case. Thus, counsel did not misrepresent that the Florida no-contact order was dismissed on the basis of her client's filing. In sum, the trial court did not abuse its discretion by denying defendant's November 15, 2023 motion for sanctions.

## XII. ATTORNEY FEES UNDER MCR 3.206(D)

Finally, in Docket Nos. 369563 and 369634, defendant argues that the trial court abused its discretion when it denied her request for attorney fees and expenses under MCR 3.206(D) based on an inability to bear the expense of the litigation. We disagree.

A trial court's ruling on a motion for attorney fees under MCR 3.206(D) is reviewed for an abuse of discretion. *Loutts v Loutts (After Remand)*, 309 Mich App 203, 215-216; 871 NW2d 298 (2015). Issues of law are reviewed de novo, and factual findings are reviewed for clear error. *Id*. at 216.

MCR 3.206(D), which relates to domestic-relations actions, provides for reimbursement of attorney fees by the other party under certain circumstances, stating:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules. [MCR 3.206(D).]

At issue is MCR 3.206(D)(2)(a), which relates to whether the moving party can bear the expense of the action. " '[W]hether a party has an inability to pay is dependent on the particular facts and circumstances of each case.' " *Colen v Colen*, 331 Mich App 295, 308; 952 NW2d 558 (2020) (citation omitted; alteration in original). The trial court must give " 'special consideration to the specific financial situations of the parties and the equities involved.' " *Id*. (citation omitted). The issue is a factual one that the trial court must address. *Id*. at 309. "The party requesting attorney fees must show that the attorney fees were incurred and that they were reasonable." *McIntosh*, 282 Mich App at 483.

To support her argument on appeal, defendant relies on this Court's opinion in *Diez v Davey*, 307 Mich App 366, 396; 861 NW2d 323 (2014). In *Diez*, this Court held that an attorney-fee award was appropriate because the undisputed evidence was that the defendant-mother earned less than $8,000 per year but incurred more than $118,000 in attorney fees during the litigation. In contrast, the plaintiff-father was the sole shareholder of a profitable company, earned a salary of $183,000 per year, and had savings. *Id*. Under these circumstances, this Court found the trial court did not abuse its discretion by awarding the defendant-mother her attorney fees. *Id*. at 397.

This case differs from *Diez* because, as the trial court aptly noted, the record did not provide enough information to support defendant's contention that she could not afford to pay her own attorney fees. Although defendant represented that she lost her Florida business while the matter was pending, there was also testimony at the November 30, 2023 hearing that she had significant personal assets and that her education would allow her to pursue other employment. Defendant also confirmed she drives a high-end luxury vehicle that she was making payments on herself.[26]

---

[26] While defendant raises several arguments in her reply brief about the costs to terminate the vehicle lease compared with the costs of the lease, defendant did not provide evidence to the trial court supporting this argument.

The record also supported the trial court's finding that defendant has an ability to earn an income, as demonstrated by the fact that she went to school to become a physician's assistant (although she did not complete all the requirements to become licensed). And while defendant argued that she could not work because plaintiff would not allow ASK to attend daycare, plaintiff testified that he disapproved of one daycare option but agreed with the idea of ASK attending daycare. The trial court had resolved that issue by requiring ASK to attend daycare through a structured learning environment in Florida.

Additionally, as the trial court noted, defendant hired three separate law firms in this matter, which drove up the amount of her outstanding attorney fees. Defendant argues on appeal that she had "no choice" but to hire three attorneys because plaintiff has two trial attorneys and two appellate attorneys, and considering plaintiff's "relentless and unfounded attacks" in the trial court. However, defendant did not move for attorney fees under MCR 3.206(D)(2)(b), which allows for fees "incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules." Defendant also fails to present evidence to support why she repeatedly had all three attorneys present at each court hearing. Therefore, the court did not clearly err by finding that defendant's decision to hire three attorneys weighed against awarding her attorney fees because of an inability to pay.[27]

Finally, while it is true that the trial court should give special consideration to the parties' financial situation and the equities involved, the fact that plaintiff is a high-wage earner does not establish defendant's inability to pay her own attorney fees under MCR 3.206(D)(2)(a). Similarly, the fact that plaintiff filed motions in the trial court and original actions in this Court, which increased the overall costs of the litigation, also does not support that defendant was unable to bear the expense of the case. In sum, the trial court did not abuse its discretion or clearly err by finding that defendant did not support either her September 6, 2023 or November 15, 2023 request for

---

[27] Defendant raises several additional arguments tangential to this issue, none of which warrant relief. She claims that she earned only $9,000 in 2023, but no evidence in the record supports this—she did not testify about this amount during the evidentiary hearing, and she did not attach an affidavit, bank records, or other evidence that would show her sole earnings were $9,000 in 2023. Defendant also complains that she had to pay ASK's medical expenses out of pocket, but as the trial court correctly concluded, to the extent plaintiff was not contributing to ASK's medical expenses, defendant could demand enforcement, and request reimbursement, of those expenses under the terms of the UCSO. She therefore had a remedy outside of court-ordered attorney fees. Lastly, in her reply brief, defendant argues for the first time that the trial court erred by imputing the $120,000 income on her for purposes of this attorney-fee issue. We decline to address this argument because raising an argument for the first time in a reply brief is insufficient to present the issue for review. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).

attorney fees and costs under MCR 3.206(D). For the same reasons, we deny defendant's MCR 3.206(D) request for appellate attorney fees.[28]

In Docket No. 371752, we vacate the parenting-time portions of the January 26, 2024 order and the February 2, 2024 amended order, and remand for further consideration of an appropriate parenting-time schedule that places the burden of travel on the parents rather than the child, as this Court previously directed in *Kleinfeldt I*. In all other respects, we affirm.

We retain jurisdiction and order the trial court to, within 56 days of the Clerk's certification of the remand order issued with this opinion, hold any necessary hearings and issue a new parenting-time schedule that complies with this opinion, as well as this Court's opinion in *Kleinfeldt I* and this Court's June 5, 2023 order clarifying this Court's May 10, 2023 order, to the extent that all of these opinions and orders required the trial court to issue a parenting-time schedule that places the burden of travel on the parents, not ASK. Until the trial court issues a new parenting-time schedule, the current parenting-time schedule remains in effect.

/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien
/s/ Matthew S. Ackerman

---

[28] We decline to address plaintiff's additional argument in Docket No. 369635 that the trial court erred by failing to order ASK's immediate return to Michigan. Plaintiff's argument has its basis in this Court's domicile analysis in *Kleinfeldt I*, which our Supreme Court recently vacated in *Kleinfeldt II*, ___ Mich at ___; slip order at 1. And, as noted earlier, in *Kleinfeldt III*, this Court recently remanded the case to the trial court for reconsideration of the issue of domicile consistent with MCL 722.27(1)(c). *Kleinfeldt III*, unpub op at 2-3.

NOSSONAL KLEINFELDT  V NICOLE STERN

Docket No.    369562; 369563; 369634; 369635; 369931; 371076; 371752

LC No.    2022-511266-DC

Kirsten Frank Kelly
Presiding Judge

Colleen A. O'Brien

Matthew S. Ackerman
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings.  We retain jurisdiction.  After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal.  Any challenges to the trial court's decisions on remand must be raised in this appeal.  Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal.  The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant, Nicole Stern, must initiate the proceedings on remand within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded.  As stated in the accompanying opinion, we order the trial court to hold any necessary hearings and issue a new parenting-time schedule that complies with this Court's opinion, as well as this Court's opinion in *Kleinfeldt I* and this Court's June 5, 2023 order clarifying this Court's May 10, 2023 order, to the extent that all of these opinions and orders required the trial court to issue a parenting-time schedule that places the burden of travel on the parents, not ASK.  Until the trial court issues a new parenting-time schedule, the current parenting-time schedule remains in effect.  The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court.  Appellant, Nicole Stern, must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant, Nicole Stern, must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

_____
June 05, 2025
Date

_____
Chief Clerk